No. 18,555.

IRA A. GILBERT, *Appellee*, V. THE MISSOURI PACIFIC
RAILWAY COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. PERSONAL INJURIES—*Driving Across Railroad Track—Con-
tributory Negligence — Wantonness of Defendant.* The de-
cision in the case of *Railway Co. v. Baker,* 79 Kan. 183,
98 Pac. 804, relating to the subject of wantonness in speeding
a railway train along or across a city street, approved and
followed.

2. SAME—*Wantonness Not Proven.* The evidence and special
findings of fact returned by the jury considered and held
not to meet the requirements of the law essential to con-
stitute wantonness.

Appeal from Nemaha district court; WILLIAM I.
STUART, judge. Opinion filed March 7, 1914. Re-
versed.

*W. P. Waggener, J. M. Challis,* both of Atchison, and
*R. M. Emery, jr.,* of Seneca, for the appellant.

*R. F. Hayden,* and *George P. Hayden,* both of Topeka,
for the appellee.

The opinion of the court was delivered by

BURCH, J.: The question in this case is whether or
not the plaintiff, who was negligent in driving upon a
railway crossing in front of one of the defendant's
moving trains, should recover damages on the ground
that the defendant was guilty of recklessness and wan-
tonness in injuring him.

The collision occurred on Fourth street in the city of
Centralia, a city of the third class. The street extends
north and south. Three of the defendant's tracks cross
it from east to west near the center of the business
section of the town. The street is the principal thor-
oughfare of the town, many crossings of the tracks
are made daily, and a city ordinance limits the speed

of trains to eight miles per hour. Coming from the south the first track to be encountered is a sidetrack. Forty-one feet north of it is the main track. The plaintiff approached from the south while the train approached from the east on the main track. The plaintiff was driving a team of horses hitched to a farm wagon. He stood up in his wagon, drove in a walk across the sidetrack, across the space intervening between that track and the main track, and then drove upon the main track without looking for or giving heed to the approaching train, which could have been seen for a distance of one thousand or twelve hundred feet. It was about three o'clock in the afternoon of a bright, clear day in January. The plaintiff was in full possession of all his faculties, frequently passed over the track and was familiar with it. His team moved at the rate of about three miles per hour and did not become frightened at the approaching train. The train, which was a work train consisting of an engine and five cars, was moving at the rate of thirty miles per hour. The whistle was sounded fifteen hundred feet east of Fourth street, and the bell was ringing at the time the engine approached the crossing, when near it. The engineer and fireman were in their proper positions on the engine, the fireman being on the south side. When the fireman discovered the plaintiff he was crossing the sidetrack. The fireman supposed the plaintiff would act according to the habit of people generally, approach the main track and stop, and consequently did not notify the engineer at once. When the fireman saw that the plaintiff was attempting to cross in front of the train he notified the engineer, who immediately applied the air brakes and sounded the alarm whistle, but it was too late to avoid the collision.

At the trial the court gave the jury the following instructions, which were accepted by the plaintiff and which are the law of the case:

"Before the plaintiff can recover in this case, you must not only find that the defendants' servants and

Gilbert v. Railway Co.

employees were guilty of ordinary negligence, but you must find that such negligence and want of care was reckless and wanton. The undisputed evidence in this case clearly shows that the plaintiff was guilty of negligence at the time he approached the crossing in question by not looking to the east to see whether or not a train was approaching from that direction. And being so negligent he can not recover in this case on account of the mere want of ordinary care and prudence on the part of the defendant company's servants and employees. But even though the plaintiff was guilty of such negligence, yet if you believe from the evidence that the operation of the train in question by the servants and employees of the defendant company, at the time of the accident, was reckless and wanton, then the defendant company can not avail itself of the defense of negligence on the part of plaintiff, and plaintiff would be entitled to recover.

"The words 'reckless and wanton' as herein used, mean the conscious failure of one charged with a duty to exercise due care and diligence to prevent an injury, after the discovery of the peril, or under circumstances where he is charged with the knowledge of such peril, and being conscious of the inevitable or probable result of such failure still acts without due care and diligence. And it is immaterial whether the failure to discharge the duty in the exercise of care and diligence springs from an act of commission or omission. The duty referred to, the disregard of which amounts to wantonness, is that which arises only when the person charged with dereliction has knowledge of the danger, or of the facts which imputed that knowledge to him. One who is properly charged with recklessness or wantonness is not simply more careless than one who is only guilty of negligence; his conduct must be such as to put him in the class with the willful doer of wrong. The only respect in which his attitude is less blameworthy than that of the intentional wrongdoer is that instead of affirmatively wishing to injure another he is merely willing to do so, or indifferent whether he does so or not.

"The trainmen in charge of said engine had the right to assume and rely upon the fact that plaintiff was in the possession of all of his faculties, and that he, having an unobstructed view of said approaching train, knew

of said approaching train, and that he had a team that was safe and that he would stop said team and would not attempt to cross over said track in front of said train, or drive so close to said track that the train passing along would collide with said team, and if you find from the evidence that said trainmen exercised reasonable and ordinary care to avert said accident after it became apparent to them, or would have been apparent to a reasonably prudent man that plaintiff was about to go upon said railroad track in front of said train, then you would not be justified in finding them or either of them guilty of wanton negligence, and this is the law, even though you should find that said train was being operated at a greater rate of speed than provided for in the ordinance of the city of Centralia, and without causing the bell to be rung."

The jury returned, among others, the following special findings of fact:

"3.  What distance east of plaintiff was the fireman when he first discovered the plaintiff or his team? A.  550 feet.

"Q. 25.  After plaintiff had driven over said house track, and his wagon had cleared the same, how far were the heads of the horses from the main track, on which said train was approaching?  Ans.  Nineteen feet six inches.

"Q. 26.  When plaintiff drove his team onto said main line track on which said train was approaching how far was the engine from him?  Ans.  140 feet when horses' feet struck south rail of main track.

"Q. 41.  Did those in charge of said engine when they discovered the plaintiff was about to cross over said track in front of said approaching train, fail to do anything which they, or either of them, might have done to notify plaintiff of the approach of the train, and to prevent the accident?  Ans.  Yes.

"Q. 42.  If the next preceding question is answered 'Yes,' then state in detail in what such failure consisted?  Ans.  The fireman should have called the engineer's attention sooner to give the alarm by whistling.

"Q. 52.  When those in charge of said engine discovered that plaintiff was apparently going to attempt to cross over said track and in front of said approaching

train, what was there that they could have done which they did not do, if anything, which would have prevented the accident? Ans. Should have. given alarm by whistling.

"Q. 55. When plaintiff drove his team from a point where they were a sufficient distance from the track so that the train could have passed along the track without striking them, how far was the engine from him? Ans. 190 feet.

"Q. 56. When plaintiff drove his team from a point where they were a sufficient distance from the track so that the train could have passed along the track without striking them, could those in charge of said engine then have done anything which they did not do, which would have prevented the accident? Ans. No."

The jury returned a verdict for the plaintiff, upon which judgment was entered.

It is plain from the foregoing facts that the jury either disregarded the instructions or mistook slight delay, and perhaps an error of judgment, on the part of the fireman, for wantonness. It is neither a fair nor reasonable inference that the fireman, knowing of the plaintiff's peril and conscious of the inevitable or probable result of failure to act, delayed notifying the engineer through either willingness to run the plaintiff down or indifference to whether he did so or not. All the jury could say was that the fireman should have called the engineer's attention sooner, to give the alarm by whistling. The fireman was at his post, he did see the plaintiff, he did notify the engineer, the whistle was sounded, the bell was rung, the emergency brake was applied, and everything was done which could be done to avert disaster. If these measures had been taken a few seconds earlier the collision would have been prevented. There was no compelling occasion to take them until the fireman appreciated, contrary to what he had the right to suppose and did suppose, that the plaintiff was oblivious of the train and was actually driving into it. While immediate action was impor-

tant, there is nothing in the facts to indicate that the fireman coolly waited, either through malice or indifference, until too late, and then gave the engineer the notification to make the very efforts which would have saved the plaintiff if they had been exerted a moment sooner. The plaintiff was in sight of the fireman some twelve and one-half seconds. In that time the plaintiff left the sidetrack, drove his unfrightened team across the space between the two tracks, and instead of stopping went on the main track. The train moved five· hundred and fifty feet. The only legitimate inference is that the fireman was not quick enough in action, and possibly in apprehension.

The findings of fact cover the essential features of the case. The plaintiff, however, seeks to uphold the verdict under the decision in the case of *Railway Co. v. Baker,* 79 Kan. 183, 98 Pac. 804, by directing attention to the speed of the train and the public character of the crossing. The opinion in the Baker case contains all that need be said with reference to the law governing the subject of wantonness in cases of this character.. The syllabus reads as follows:

"In an action to recover damages on account of an injury to a pedestrian resulting from a locomotive being driven along the public street of a city at an unlawful and dangerous rate of speed, with no signal being given of its approach and with no outlook being kept, the misconduct of those in charge of it may amount to such recklessness and wantonness as to cut off the defense of contributory negligence, although such employees did not know of the presence of the person injured, if to their knowledge the extent to which the street was used made an injury so probable that they must be deemed to have realized its im-- minence and to have refrained from taking steps to prevent it because they were indifferent whether it oc-- curred or not."

In the opinion it was said:

"The running of a train at an excessive speed along· or across a busy street of a populous city, without either·

Gilbert v. Railway Co.

outlook or signal, may well be held to exhibit such contempt for the rights of others as to supply the place of positive malice. . . . The conduct of the employees in charge of an engine in failing to take measures for the protection of a person upon the track can be characterized as 'wanton,' in the sense in which that word is used in this connection, only when they actually know of his presence, or when the situation is substantially the same as though they had such knowledge—when such knowledge may fairly be imputed to them. It is not enough for that purpose that the exercise of ordinary diligence would have advised them of the fact, for their omission of duty in that regard amounts only to negligence. Nor is it enough that they know some one might be in the place of danger; the probability must be so great—its obviousness to the employees so insistent—that they must be deemed to realize the likelihood that a catastrophe is imminent and yet to omit reasonable effort to prevent it because indifferent to the consequences." (pp. 186, 187.)

Some witnesses estimated that there were as many as twelve hundred or fifteen hundred crossings of the defendant's track each day. These estimates were arrived at by the following method: "If one hundred persons crossed over the crossing twelve times a day each, there would be twelve hundred crossings." The same witnesses testified that there were a large number of school children who lived south of the track and crossed it to attend school—all of whom, so far as the evidence shows, were safely housed in school when this train approached. There is no evidence to indicate that a congestion of traffic on this street of a country town about the middle of the afternoon of a Tuesday in midwinter was to be anticipated, much less that it was so likely to occur as to render a catastrophe fairly imminent. The day was bright and clear. The crossing was visible for a long distance and the trainmen had an unobstructed view of just what the situation actually was. The train was light, and was equipped with air brakes in working order. Eyewitnesses watched the train come into the town and saw the collision. Not

one testified that anybody crossed the railway tracks ahead of the plaintiff, after the train whistled for the crossing. Both signals and lookouts were employed. The whistle was blown substantially as for a highway crossing. The engineer and fireman were both on guard at their proper posts, and the collision with the single traveler who appeared could have been prevented even up to the time that it became apparent he was going to try to make the crossing, by means within the trainmen's control. The Baker case forbids the inference, as a just and rational conclusion from these facts, that the engineer was guilty of wantonness because of the speed of the train. Besides this, the speed of the train was not the cause of the collision. It was caused by the negligence of the plaintiff in blindly driving on the track and the omission of the fireman to notify the engineer the moment the plaintiff's determination became manifest.

The plaintiff was engaged in an active disregard of his own safety up to the last moment when he might have been saved, and consequently has no standing to invoke the doctrine of last clear chance.

In view of the findings of the jury and the instructions of the court, the judgment is reversed and the cause is remanded with direction to enter judgment for the defendant.