No. 18,555.

IRA GILBERT, *Appellee,* v. THE MISSOURI PACIFIC RAIL-WAY COMPANY, *Appellant.*

OPINION DENYING A REHEARING.

HEADNOTE BY THE REPORTER.

REHEARING DENIED—*Personal Injuries—Wantonness.* Upon due consideration of the petition for a rehearing in connection with the abstracts and records on file in the case the court finds no sufficient grounds for a rehearing, and the same is denied.

Appeal from Nemaha district court; WILLIAM I. STUART, judge. Opinion denying a rehearing filed May 9, 1914. (For original opinion of reversal see 91 Kan. 711, 139 Pac. 380.)

*W. P. Waggener, J. M. Challis,* both of Atchison, and *R. M. Emery, jr.,* of Seneca, for the appellant.

*R. F. Hayden,* and *George P. Hayden,* both of Topeka, for the appellee.

The opinion of the court was delivered by

BURCH, J.: In a petition for a rehearing it is said broadly that the facts set out in the original opinion upon which the decision is based (*Gilbert v. Railway Co.,* 91 Kan. 711, 139 Pac. 380) are not the facts shown by the record. The decision was based on the special findings of the jury (original opinion, page 716), which could not well be falsified. But passing by this fundamental defect in the petition for a rehearing the fol-

lowing is a sample specification of the plaintiff's general charge.

"In the opinion, the Court said:

" 'The fireman was at his post, he did see the plaintiff, he did notify the engineer, the whistle was sounded, the bell was rung, the emergency brake was applied, and everything was done which could be done to avert disaster.'

"Are these the natural conclusions to be gathered from the evidence. True, the fireman was at his post and he testified that he notified the engineer; but was the whistle sounded, were the above measures taken? All of appellee's [plaintiff's] witnesses testified that they were not and the jury so found in answer to special question 52."

The ill-considered extravagance of this statement may be judged when it is pointed out that the plaintiff's own witness, Haskett, testified that he heard the engine whistle, then the crash of the collision, and then saw the train go by, and that the jury found specially in finding 45, not printed in the original opinion, that the bell was rung and ringing at the time the engine approached the crossing where the collision occurred, when near the crossing.

The plaintiff produced five witnesses who gave negative testimony that they "did not recollect" hearing the bell or whistle, or "did not hear" the bell or whistle just before the collision occurred. Two of these witnesses confessed to defective hearing. Another said he was giving no attention to the train. Another stated that the bell might have been ringing, but he did not recollect it. The fifth was not cross-examined. The positive testimony of a large number of witnesses who could and did hear, including Mr. Haskett, produced by the plaintiff, was that the alarm whistle was sounded before the collision occurred. Several of these witnesses testified to the ringing of the bell. Some of them described the peculiar shrill noise of the whistle. Mr. Haskett called it a screech. The jury, following

an instruction of the court on the subject, accepted the positive testimony, as is shown beyond dispute by the finding relating to the ringing of the bell. They were not separately interrogated concerning the sounding of the whistle, but the whole matter was covered by finding 56, which was framed upon the testimony of the engineer, corroborated by the positive testimony referred to. The engineer said that when he received the alarm from the fireman that a team was about to attempt the crossing, the bell was ringing, that he applied the air immediately, grabbed the whistle and gave two or three toots and made all the alarm he could in the time he had, and that there was nothing he could have done which he did not do to prevent the accident. The jury found accordingly and the opinion stated the facts accordingly.

Finding 52 can not be perverted into a finding that no whistle was sounded at all after the whistle given 1500 feet east of Fourth street. That finding merely states what ought to have been done to avoid the accident, that is, the whistle should have been sounded when it appeared that the plaintiff was apparently going to attempt to cross in front of the engine. It must be read with finding 42, on the same subject, that the fireman, who was observing the plaintiff, should have called the engineer's attention *sooner* to give the alarm by whistling when the fireman discovered the plaintiff was about to cross the track in front of the train. Finding 42 is conclusive that the fireman did call the engineer's attention to give the alarm by whistling— but not soon enough to prevent the collision. Finding 56 summarizes what followed.

It is charged in the petition for a rehearing that an important fact was not stated in the original opinion, that is, that the plaintiff had his back turned to the train. There is no testimony in the abstract or counter-abstract that the plaintiff had his back turned to the train.

The evidence produced by the plaintiff on the subject was as follows:

"He was wearing a cap, and was standing up in his wagon, driving with his right hand, and would naturally be turned a little to the west; that his head was not turned to the west, but he was n't looking right straight north."

Witnesses for the defendant said the plaintiff's head was turned in a direction variously described at from just a little northwest to west. The fireman said that in his estimation the plaintiff was looking west and away from the track. (The track ran west.) In preparing the opinion it did not seem important to canvass the evidence on this subject, because the essential fact was that the plaintiff did not look in the direction of the train. The court instructed the jury in the seventh instruction that this fact was undisputed. Full force was sought to be given to it in the opinion by the expression, "The plaintiff was oblivious of the train" (p. 715), using the expression in the sense that the train, which the plaintiff had looked for when going for his team, was extinguished from his mind. This meaning of "oblivious" is illustrated in the Century dictionary as follows:

"'Oblivion is a kind of annihilation; and for things to be as though they had not been is like unto never being.'  *Sir T. Browne, Christ. Mor., i. 21."*

As bearing on the subject of the use made of the crossing, the plaintiff points out that the original opinion omitted to state that one man was walking behind the plaintiff's wagon toward the crossing. This man, however, had only reached the switch track when the collision occurred and consequently did not tend to crowd the place, which was in full view of the trainmen for a long distance, as described in the original opinion on page 717.

The result is that the facts stated in the original opinion need to be neither corrected nor supplemented.

Gilbert v. Railway Co.

The plaintiff expresses surprise because the decision in the Baker case (*Railway Co. v. Baker*, 79 Kan. 183, 98 Pac. 804) is approved while the judgment of the district court is reversed. The material portions of the opinion in the Baker case are quoted in the original opinion and speak for themselves. The distinction between the facts of that case and of this one, in all material particulars, was pointed out. Then the principle underlying the decision in the Baker case was applied to this one, and the court is satisfied with the result.

Although the district court instructed the jury (in accordance with the fireman's testimony) as shown in the original opinion beginning at the bottom of page 713, the fireman ought to. have notified the engineer sooner, and the whistle ought to have been sounded, as the jury found. The failure to do this constituted negligence on the part of the defendant which would warrant.recovery except for the plaintiff's own negligence. But such failure was not wantonness. As stated in the original opinion, the utmost the jury could say was that the fireman's delinquency consisted in not sooner bringing about an alarm by means of the whistle. But when he saw that the plaintiff was leaving a place of safety and was "driving into the train," he either was ringing or then rung the bell himself, and he did notify the engineer, who at once sounded the whistle, applied the emergency brakes, and did everything possible to avert the collision which the notification called for. Consequently the findings of fact forbid the inference of wantonness.

Other matters contained in the petition for a rehearing do not require discussion, and it is denied.