Gilbert v. Railway Co.

No. 18,555.

IRA GILBERT, *Appellee,* v. THE MISSOURI PACIFIC RAIL-
WAY COMPANY, *Appellant.*

OPINION DENYING A SECOND PETITION FOR A
REHEARING.

SYLLABUS BY THE COURT.

PERSONAL INJURIES — *Railroad Crossing—Contributory Negli-
gence—Wantonness of Defendant Not Shown.* A second peti-
tion for a rehearing, presented by permission of the court,
considered, and *held,* that the statement of facts contained in
the original opinion is correct and that the case of *Railway
Co. v. Baker,* 79 Kan. 183, 98 Pac. 804, does not govern this
controversy.

Appeal from Nemaha district court; WILLIAM I.
STUART, judge. Opinion denying a second petition for
a rehearing filed July 7, 1914. (For original opinion of
reversal see 91 Kan. 711, 139 Pac. 380; for opinion
denying a rehearing see *ante,* p. 281, 140 Pac. 883.)

*W. P. Waggener, J. M. Challis,* both of Atchison, and
*R. M. Emery, jr.,* of Seneca, for the appellant.

*R. F. Hayden,* and *George P. Hayden,* both of Topeka,
for the appellee.

The opinion of the court was delivered by

BURCH, J.: By permission of the court, the plaintiff
presents a second petition for a rehearing. It is said
that the court misapprehended the facts in its two
former opinions, that the case is important, that the
plaintiff is a physical wreck, is poor, and that justice
should be done.

Just why the court should be reminded that the case
is important is not apparent. It heard the parties in
oral argument, considered in consultation the briefs
and abstracts, and wrote an opinion covering every
essential feature of the controversy. (*Gilbert v. Rail-*

*way Co.,* 91 Kan. 711, 139 Pac. 380.)   It then considered the petition for a rehearing, again considered the briefs and abstracts, and wrote a second opinion. (*Ante,* p. 281.)   Hence the case has already been given the consideration which an important case might claim.

That the plaintiff has suffered grievously from his injuries and is in embarrassed financial condition is a matter greatly to be lamented.   But however much the members of the court may deplore the plaintiff's misfortunes, justice demands that the court find a legal liability on the part of the defendant before it compels the defendant by judicial process to contribute to the plaintiff's relief.

While the cases of other litigants wait, the court will take the time necessary to make another disposition of the plaintiff's two principal contentions—that the court misstates the facts and refuses to follow a former decision (*Railway Co. v. Baker,* 79 Kan. 183, 98 Pac. 804), settling the law of the case.

It will be remembered that the defendant's track crosses Fourth street of the town of Centralia.   The plaintiff, without giving any attention to a train approaching in full view, drove his team, hitched to a farm wagon, on the track in front of the train.   A collision occurred and the plaintiff was severely injured. At the trial the court instructed the jury that the plaintiff was guilty of negligence, and could not recover because the defendant was also negligent, but submitted to the jury the question of wantonness on the part of the trainmen.   The fireman had observed the plaintiff's approach and did not call the engineer's attention soon enough to give the alarm by whistling to avert the collision.   The jury returned special findings of fact, and with them a general verdict for the plaintiff.   The judgment was reversed and judgment was ordered for the defendant on the ground that the special findings did not warrant the inference of wantonness.   The first

petition for a rehearing presented the precise points urged now, and was overruled.

The material findings of the jury, except No. 47, that the bell was rung when the engine was near the crossing, and No. 43, that the engineer and fireman were in their proper places on the engine just before the collision, are printed in the original opinion at pages 714, 715. In narrating the essential facts, and elsewhere in the original opinion, it was said, on the basis of the special findings of fact, that the alarm whistle was sounded just before the collision occurred. The plaintiff disputes this statement and says the jury found to the contrary. The court quoted at length from its decision in the Baker case, and held that that case did not apply. (91 Kan. 716.) The plaintiff disputes the court's estimate of the Baker case and says it does govern the present controversy. ·

The plaintiff adds nothing to what has already been considered in the two former opinions except this:

It is said that the plaintiff made the "one statement of facts before this court" in his brief responding to the defendant's (appellant's) brief. In this brief the statement was made that the last time the train whistled was 1500 feet east of Fourth street. In a reply brief by the defendant this statement was not referred to. Starting with these two facts, a statement in one brief not corrected in another, the plaintiff devotes something like a page of typewriting to them, when they suddenly swell to this remarkable proportion:

"It was a fixed settled fact between the attorneys for plaintiff and defendant. Neither of them doubted but what the jury had settled this point. And we believe that when the attorneys for the parties agree upon the facts that were established upon the trial, that it is not the duty of the Appellate Court to interfere, especially in behalf of a railroad company who always employs attorneys thoroughly competent to take care of the interest of their clients."

The defendant filed the first brief. The very first thing contained in that brief, after a statement as to the character of the case and the assignment of errors, is a specific statement of the facts which were conceded. Of course the "agreement" and other things contained in the plaintiff's brief which followed are not among the conceded things. The defendant's brief then went on, and under the various assignments of error stated the testimony essential to an understanding of them, and so, taken as a whole, presented the defendant's view of the facts. The reply brief was devoted to answering the plaintiff's argument on matters of law. When the plaintiff's brief was examined the court found that the parties were not of one mind as to the facts, and so it went to the abstracts to find out the actual facts for itself. As frequently occurs in vigorously contested cases, the court is not able to say that it agrees entirely with either of the parties.

The statement in the plaintiff's brief, however, was fortified by authority. It gave the page of the abstract where the supposed fact could be found. It referred specifically to page 57 of the abstract. That page of the abstract contains findings 41 to 49, inclusive. The plaintiff makes no contention that these findings have any relation whatever to an alarm whistle given after it appeared the plaintiff was about to attempt the crossing in front of the train. Both petitions for a rehearing plant themselves squarely on finding 52 alone, to be found on page 58 of the abstract, and, as will be shown hereafter, the plaintiff studiously ignores finding 42, to be found on page 57 of the abstract.

The court is not assisted to just conclusions by the plaintiff's injecting into the case assertions of the character of the one under consideration, and it is not the first. In the first petition for a rehearing, responding to a statement by the court that the whistle was sounded and the bell rung, the plaintiff said that all his witnesses testified to the contrary and that the jury

found to the contrary. This was said in face of the record that the plaintiff's witness, Haskett, testified positively to the sounding of the whistle, and the jury found specially that the bell was rung. The figment that the plaintiff "had his back turned toward the train," adverted to in the opinion on rehearing (*ante*, p. 283), belongs to the same class. The daily crossing of the track by a large number of school children has been reiterated as a fact showing the evil-mindedness of the trainmen, although there was no pretense at the trial that any school child was anywhere in the neighborhood of the crossing at the time of day the train passed. To make it appear that the trainmen were recklessly threatening the lives of the people of Centralia, it has been repeatedly said that the crossings were "two a minute during business hours." One witness for the plaintiff said he held a watch on the plaintiff during the time the plaintiff walked over to the south of the track, got his team, and then drove back—a period of two minutes. Not a word comes from this witness, or from any other witness in the case, that anybody else crossed the track during that time—the very time the train was approaching—and, as shown in the original opinion, the possible number of people who might cross the track in the course of a day became inconsequential in view of the actual conditions at the time this train approached.

The court is compelled to advert to this men-in-buckram method of dealing with facts because one ostensible ground for the petition for a rehearing is to set the court right concerning the facts in the case.

The action of the court is likewise given implications that are unwarranted. For example, it is said that the court can not take the fireman's and engineer's testimony as against a finding of the jury. The court has twice announced, once in the original opinion and once in the opinion on rehearing, that the decision was rested on the findings of the jury. The court has not

adopted the testimony of this witness or of that witness as the basis of its decision, and no language will be found in either opinion warranting such an inference. The evidence was used as a source of light by which to interpret the findings but for no other purpose.

The findings of fact constitute a written document signed by the foreman of the jury, the meaning and legal effect of which the court is qualified to determine. Neither the court nor the plaintiff can add to or detract from those findings. In considering them, however, the court is limited to legal and rational methods of interpretation. It does not have the privilege of picking out a single finding of fact from a series relating to a subject, excluding all others from consideration, and making a decision accordingly. What then are the facts?

The jury found that when those in charge of the engine discovered that the plaintiff was going to attempt to cross in front of the train they should have given an alarm by whistling, which would have prevented the accident. (Finding 52.) But the jury further found that what should have been done to prevent the collision when the men in charge of the engine found the plaintiff was going to attempt to cross in front of the train was that the fireman should have called the engineer's attention *sooner* to give the alarm by whistling (Finding 42), and then the jury found that when the plaintiff left a place where the train could have passed without striking the team the men in charge of the engine could have done nothing which they did not do which would have prevented the accident (Finding 56).

What was there to do when the plaintiff left his place of safety and attempted to drive in front of the train? The answer is, ring the bell and blow the whistle to alarm the plaintiff, and set the emergency brakes to stop the train. The jury found specially

Gilbert v. Railway Co.

that the bell was rung. (Finding 47.) They were not asked specially about the alarm whistle, but they made the comprehensive finding that the engine men omitted to do nothing which could have been done. What then do all of the findings, and not one alone, mean? They manifestly mean that as the plaintiff approached the track he ought to have been warned by blasts of the whistle, which would have saved him from injury; that the fireman delayed calling the engineer's attention to give the alarm by whistling; that the fireman called the engineer's attention to give the alarm by whistling, but not soon enough; that the bell was rung; and that in all other respects everything was done that could have been done that would have prevented the accident, including an alarm by whistling.

To test this conclusion respecting the meaning of the findings the evidence and the instructions to the jury may be scanned.

The plaintiff produced five witnesses who gave negative testimony that they did not hear, or did not remember of hearing, the bell rung just before the collision. One was paying no attention to the train. Others said the bell might have been rung. Witnesses were produced by the defendant that the bell was ringing just before the collision. The court instructed the jury that the testimony of credible witnesses who positively testified that the bell was rung and the whistle sounded was of more value than the statements of equally credible witnesses that they did not hear the bell rung or the whistle sounded. The negative testimony of the plaintiff's witnesses was rejected by the jury in accordance with the instructions they had received, and they found specially that the bell was rung when near the crossing. The testimony that the alarm whistle was sounded just before the collision was produced side by side with the testimony that the bell was rung. Aside from the trainmen and other em-

ployees of the defendant, residents of Centralia and of the vicinity, who were near the place of the collision and heard and saw what occurred, told of what was called the "stock alarm" being given just before the train struck the plaintiff. The peculiar noise of the whistle was described as being "shrill," "a screech," a "screaming whistle." This evidence was fortified by evidence produced by the plaintiff himself. One of his own witnesses heard the alarm and described the whistle as others had done, as a screech.

The fireman called the engineer's attention to do what? To give the alarm by whistling. The engineer told what occurred when he received the notification from the fireman. He applied the air, raised up and got hold of the whistle which was a little higher, and gave two or three toots, all the alarm he could in the time he had. The fireman was ringing the bell on his side of the cab. After these details had been stated by the engineer his entire conduct was summarized in the following question and answer:

"Was there anything you could have done that you did n't do to have prevented this accident? Ans. No, sir."

This summary of the conduct of the engineer was placed bodily in special question 56 propounded to the jury, which was answered by the jury precisely as the engineer had answered.

Tested by the rule that the findings presumably respond to the evidence and to instructions of the court on how to treat the evidence; tested by the finding of the jury relating to the ringing of the bell on the same kind of evidence relating to the whistle; tested by the rule requiring the several findings to be construed together; tested by the rule that findings are to be harmonized if possible and read in such a way as to be consistent; tested by the inherent probability that when the engineer received the alarm from the fireman his action in sounding the whistle was as

spontaneous and automatic as the application of the air to the brakes; and tested by the rules of right thinking and common sense, finding 56 embodies a finding that the alarm whistle was sounded when the fireman called the engineer's attention to do so.

Here again let it be understood that the court adopts no testimony given by anybody. The testimony and the instructions of the jury have simply been searched in order that the findings returned by the jury may be understood, and to the mind of the court, whose data and whose method have thus been described in detail, no conclusion is rational except the one which has been announced.

What answer does the plaintiff make to this interpretation of the findings? In his brief he said that finding 56, which the court regards as vital to the decision, is meaningless. In the present petition for a rehearing he does not mention finding 42, that the engineer's attention should have been called *sooner* to give the alarm by whistling, does not mention finding 47, that the bell was rung at the critical moment, and does not mention finding 56. He simply ignores the findings which interfere with a judgment in his favor and says the court misstates the facts. This being his attitude, the discussion of this branch of the case is closed.

In the petition for a rehearing it is said:

"We have been unable to obtain from either of the Court's opinions a satisfactory explanation of why the facts in the case at bar do not fall squarely within the rule of law laid down in the Baker case."

What the court undertook to do in the original opinion was to point out the distinction between the Baker case and this one in all material particulars. After reading the first petition for a rehearing, and reexamining the subject, the court expressed itself as satisfied with the original opinion. The nature of a lawsuit is such that one party generally prevails, who

45—92 KAN.

is not always satisfied, while the other loses, who is seldom satisfied. This being true, the court's own satisfaction is the only standard to which it feels itself bound to conform.

The essence of the Baker case was this:

"In an action to recover damages on account of an injury to a pedestrian resulting from a locomotive being driven along the public street of a city at an unlawful and dangerous rate of speed, with no signal being given of its approach and with no outlook being kept, the misconduct of those in charge of it may amount to such recklessness and wantonness as to cut off the defense of contributory negligence." (Syl. ¶ 1.)

"The running of a train at an excessive speed along or across a busy street of a populous city, without either outlook or signal, may well be held to exhibit such contempt for the rights of others as to supply the place of positive malice." (79 Kan. 186.)

In the petition for a rehearing the plaintiff uses the "deadly parallel." He says the elements which made up wanton negligence in the Baker case were these:

1. Speed of the train.
2. Busy crossing.
3. Proper warnings.

It is then said that those elements are found in the Baker case as follows:

1. Speed of train, 15 miles per hour.
2. Busy crossing; crossing used by pedestrians in wet weather; had been dry some time before the accident.
3. Warnings, 750 feet from the accident.

From this it will be observed that the plaintiff suppresses a vital fact of the Baker case—that *neither lookout nor signal* was employed while the engine was going at a dangerous rate of speed along the public street. The trainmen might as well have deliberately projected an unmanned engine at a dangerous rate of speed along the street.

The other side of the parallel is constructed in this way:

1. Speed, 30 miles an hour.
2. Busy crossing, 1500 people daily or more; two a minute during business hours.
3. Warnings, 1500 feet from the accident.

It will be observed that the plaintiff here puts in on his side the speculative number of crossings instead of the actual situation. On the other hand, he suppresses the lookout kept by the engineer and fireman, who were in their proper places (finding 43), and who were in control of the agencies for giving warnings and for stopping the train; he suppresses the ringing of the bell, specially found by the jury in finding 47; and he suppresses the alarm given by the engineer at the call of the fireman, found by the jury in finding 56.

Since the plaintiff's parallel presents a case which is not the Baker case, and compares it with a case which is not this case, it would be unprofitable to pursue the subject further.

The court gave the jury an instruction which was necessary in view of the testimony by the fireman that he did not notify the engineer sooner because he supposed the plaintiff would stop when he got within five or ten feet of the track. The plaintiff does not complain of this instruction, which states the law of the case and which reads as follows:

"The trainmen in charge of said engine had the right to assume and rely upon the fact that plaintiff was in the possession of all his faculties, and that he having an unobstructed view of said approaching train, knew of said approaching train, and that he had a team that was safe and that he would stop said team and would not attempt to cross over said track in front of said train, or drive so close to said track that the train passing along would collide with said team."

Therefore there was no absolute duty on the part of the fireman to notify the engineer until the fireman realized that the plaintiff was not going to stop, con-

trary to what he had the right to suppose. Then immediate action was essential. The fault imputed to the fireman by the jury is that he did not call the engineer's attention sooner to give the alarm by whistling, but since he did ring the bell and did call the engineer's attention to do just the things required to prevent the collision, and which would have prevented the collision if done a moment sooner, that malice, or its equivalent, which would have made the fireman guilty of murder or voluntary manslaughter if death had resulted, is wanting. The only legitimate inference that can be derived from the findings is that the fireman was not quick enough in action, and possibly in apprehension. This is not wantonness, and the plaintiff's own inexcusable negligence in driving in front of the train bars recovery under settled principles of law which the court is not at liberty to disregard.

The petition for a rehearing is denied.