No. 29,999.

Mrs. Roy Bazzell, *Appellant*, v. The Atchison, Topeka & Santa Fe Railway Company, *Appellee.*

(300 Pac. 1108.)

Opinion filed July 3, 1931.

*I. T. Richardson* and *L. W. Richardson*, both of Emporia, for the appellant.

*William R. Smith, Alfred A. Scott, C. J. Putt*, all of Topeka, and *W. L. Huggins*, of Emporia, for the appellee.

The opinion of the court was delivered by

Hutchison, J.: This action was brought to recover damages for the death of plaintiff's husband resulting from a collision between defendant railway company's passenger train and an automobile driven by plaintiff's husband at a private crossing in Greenwood county.

The allegations of negligence were defective crossing, permitting

weeds, grass and brush to grow upon the right of way so as to obstruct the view of an approaching train, failure to sound whistle or ring bell to warn deceased of approach of the train, running train at a high and unusual rate of speed, wanton and reckless conduct in handling train, and defective brakes and brake equipment. The answer of the railway company was a general denial and contributory negligence. The trial resulted in a verdict by the jury for the defendant railway company, and plaintiff appeals.

The errors assigned all relate to the giving and refusing to give instructions. Two of the instructions refused, concerning which error is most strongly urged, were those relating to wantonness and the doctrine of the last clear chance.

The deceased was a young married man working for an oil company at a good salary. He was driving, with his sister, from his father's farm to Madison, approaching the private farm crossing from the east about five o'clock in the afternoon of November 25, 1928, and was struck by the engine of a passenger train coming from the north a little behind time, at the rate of nearly or about fifty miles an hour. The engine struck the right rear fender of the Chevrolet coupé about eighteen inches from the rear of the chassis. The sister was instantly killed; plaintiff's husband lived only a few hours and died a few minutes after reaching the hospital, and the car was completely wrecked and ruined.

The crossing was described as being very rough, so as to check the speed in crossing it. The ground both on the outside and inside of the rails was not leveled up to the planks next to the rails, and it was like crossing a plank in the road. The track and roadbed were a little below the general level of the ground and some dirt was piled on the east bank on the right of way so that it stood from two to four feet higher than the track and the highway approach to the track east of the crossing. This depression in the highway was gradual across the east part of the right of way starting at the fence. There was a hedge fence at the east side of the right of way on the north side of the highway leading to the crossing. There were weeds, grass and brush on the right of way north of the road and east of the track, described differently as to height and density, and by some witnesses said to have been cleared off in a triangular form next to the intersection so that one on the road could look up the track as he approached very near the crossing. The track is straight for 280 feet north of the crossing. There it begins to bend

to the west behind a corn field, which would make it practically impossible for the engineer to see anyone east of the crossing from his train approaching the crossing from the north, and he did not see the automobile before the collision. The fireman saw the automobile from a point about 300 feet north of the crossing when the automobile was in the cut on the road and moving at about five or six miles an hour; he thought the driver would stop, but he did not; the bank, grass and weeds were not high enough to obstruct his view of the automobile; that the brakes were not applied until about 100 feet from the crossing.

Some photographs said to have been taken the day after the collision, showing the crossing, the driveway and the condition of the bank and weeds on the east right of way and a train on the track 280 feet north of the crossing, were introduced in evidence.

Appellant insists that the conduct of the engineer and fireman in failing and neglecting to sound the whistle and warn the deceased of the approaching train in time for the deceased to have saved himself was wanton negligence showing an indifference for the safety of the deceased, and urges that there was no reason why the engineer should not have seen the automobile of the deceased. The court in the instructions given set out the allegation of wantonness and instructed the jury on wantonness and recklessness in connection with the matter of allowing punitive damages, but did not instruct as requested by the plaintiff as to wanton and reckless conduct on the part of the engineer and fireman in overcoming the effect of contributory negligence. Such instruction should not be given unless there is reasonable and substantial evidence of such wanton conduct.

The only evidence here as to seeing the automobile driven by the deceased is that the fireman did see it from a point 280 feet distant, when he thought, of course, it would stop before going on the crossing, and that the engineer did not see it and could not see it from his position on the engine.

The reasoning of the appellant apparently lacks consistency when it is urged the trainmen could all the time see the automobile, while on account of the bank and weeds the driver could not see the approaching train.

In the case of *Railway Co. v. Lacy,* 78 Kan. 622, 97 Pac. 1025, it was said:

". . . That the fact that a collision occurred is not *prima facie* evidence that it was caused by reckless or wanton negligence. In such a case, before

the railway company can be held liable there must be some fact or circumstance in evidence from which the natural and reasonable inference arises that the injury was caused by the reckless or wanton negligence of the employees of the company." (Syl.)

Applying the term "wanton" to the conduct of trainmen under similar circumstances as in this case, it was said in *Jacobs v. Railway Co.*, 97 Kan. 247, 154 Pac. 1023:

"Enginemen in charge of a locomotive attached to a passenger train, who cut off the steam and apply the air one quarter of ·a mile before reaching a street crossing in a small city, and who suppose that an electric warning bell stationed at the crossing is ringing are not guilty of wantonness, although they fail to ring the engine bell or sound the whistle for the crossing, and although they go through the city at the rate of forty-five miles per hour." (Syl. ¶ 2.)

The definition given in the case of *Railway Co. v. Baker*, 79 Kan. 183, 98 Pac. 804, is regularly referred to as the one applicable to wanton conduct on the part of agents of railway companies in handling trains. It was there said:

"One who is properly charged with recklessness or wantonness is not simply more careless than one who is only guilty of negligence; his conduct must be such as to put him in the class with the willful doer of wrong. The only respect in which his attitude is less blameworthy than that of the intentional wrongdoer is that instead of affirmatively wishing to injure another he is merely willing to do so." (p. 189.)

Another ruling in a railroad case shows plainly wantonness cannot be inferred but should be shown by the evidence where it was held:

"Upon the testimony, that C. was a conscious trespasser, and that there can be no recovery for his death unless the injury was willfully or wantonly inflicted; that under the circumstances, willful or wanton negligence on the part of the engineer could not reasonably be inferred, and that the trial court ruled correctly in sustaining the demurrer to plaintiff's evidence." (*Campbell v. K. C. Ft. S. & M. Rld. Co.*, 55 Kan. 536, 40 Pac. 997.)

Unless the evidence was such as to convince the trial court that wantonness was sufficiently shown to become a constituent element of the case, and sufficient to sustain a verdict based thereon, it would be his duty to refuse to give such instruction. We fail to see the element of wanton and reckless conduct in the record as being sufficient under the decisions above cited to justify the giving of the instruction on that subject.

A definition of the doctrine of the last clear chance and the rule as to its application to instances of negligence and contributory

negligence will plainly show that the facts in the case at bar are such as to make it inapplicable. The evidence does not show that the contributory negligence of the deceased had at any time discontinued. The last clear chance only applies after such contributory negligence entirely ceases.

"This doctrine can be invoked in negligence cases only where the party relying upon it has by his own prior negligence gotten himself into a predicament from which his subsequent diligence will not avail to extricate him without injury or damage through the act or delict of another party, but where such other party has a fair opportunity—a last clear chance—to avert or minimize the accident, injury or damage, by the exercise of reasonable diligence after the negligence of the first party has ceased." (*Jamison v. Atchison, T. & S. F. Rly. Co.*, 122 Kan. 305, 308, 252 Pac. 472.)

In a very recent case the same definition was applied to the evidence in a street-car case:

"In an action for damages for injuries sustained by plaintiff in being struck by defendant's street car in a city street midway between street crossings, defendant's negligence in operating its street car was established by the evidence and so found by the jury. Plaintiff's contributory negligence was also established and the trial court so instructed the jury, but added that plaintiff might recover notwithstanding her own negligence under the doctrine of the last clear chance. Record examined and held that neither the evidence nor the special findings, nor any circumstances inferable from either, disclosed an opportunity for the application of that rule of law, and the judgment in favor of plaintiff was erroneous." (*Dearing v. Wichita Rld. & Light Co.*, 130 Kan. 142, 285 Pac. 621.)

Several years ago the rule was applied and clearly stated in the following words:

"The plaintiff was engaged in an active disregard of his own safety up to the last moment when he might have been saved, and consequently has no standing to invoke the doctrine of last clear chance." (*Gilbert v. Railway Co.*, 91 Kan. 711, 718, 139 Pac. 380. See, also, *Dyerson v. Railroad Co.*, 74 Kan. 528, 87 Pac. 680.)

We find no error in the refusal of the court to give either of these two instructions requested by the plaintiff, nor in refusing to give two others, one as to the burden of proof and the other as to proximate cause, the substance of both of which was given by the court but not in the exact form requested.

Appellant criticizes instruction No. 4, referring to the weeds being an obstruction and the consequences, and applies the rule of proximate cause and then makes the usual exception as to the deceased being free from contributory negligence. The criticism is that the

defective crossing was also a proximate cause and both should have been treated together. The defective crossing was not omitted from the instructions, but there was very little to be said concerning it as a proximate cause while the matter of the bank and the weeds occupied a. conspicuous place in the testimony and particularly needed the application of the rule given in this instruction.

Appellant seriously objects to the frequency with which reference is made in the instructions to the liability of the defendant for its negligence, provided the deceased was not guilty of contributory negligence, and sometimes the expression "free from fault" was used. The use of the latter expression was in such close connection with the definition of contributory negligence that there could be no mistake as to its meaning, and as to the frequency of the general exception it was necessary, for without the exception the application would have been both inaccurate and incomplete.

Parts of several instructions are criticized as incorrect statements of the law and appellant thinks they are not cured by the remainder of the instruction, which includes some qualifications. The rule is that all the instructions are to be taken together and no one instruction or part of an instruction is to be construed by the jury or by this court by itself.

Appellant seriously objects to the use of the disjunctive "or" in the sixteenth instruction, instead of the conjunctive "and," where the court told the jury—

"If, therefore, you find from the evidence in this case that the deceased, at or immediately prior to said accident, could have seen or heard the approaching train or could have known that said automobile was approaching a railroad crossing, by the exercise of reasonable care on his part in time to have avoided the injury, then you are instructed that the presumption of law that the deceased did exercise ordinary care is overcome . . ."

Appellant argues that the proper rule is that if by the exercise of reasonable care he knew or could have known he was approaching a crossing *and* by the exercise of ordinary care he could have seen or heard the approaching train, he would be guilty of contributory negligence, holding that the former is not complete in itself, but must be coupled with either seeing or hearing before there is a liability on his part. If we understand the criticism correctly, there is no duty or obligation whatever in driving on a railroad crossing unless the driver did either see or hear the approaching train or by the exercise of reasonable care could have seen or heard it. No

authorities are cited in support of this contention, and we are not convinced that it is correct.

Appellant objects to the court singling out the alleged element of speed of the train and telling the jury that the defendant was not limited to any particular speed, except it must have a careful regard for the safety of others. This element of speed was in a succeeding instruction coupled with the ringing of the bell and blowing of the whistle prior to the reaching of the crossing as duties, regardless of statutory requirements, in order to protect life and all to be considered in determining the question of negligence of the defendant.

We have examined every criticism and objection to each and all the instructions given and find no error in them when considered together, which is the only way in which they should be considered.

Several months after the motion for a new trial in this case had been overruled, and appeal taken to this court, the appellant filed a petition for new trial, setting up newly discovered evidence which tended to contradict the evidence of the defendant company with reference to the taking of the photographs of the crossing and the right of way north of the road, on the day after the collision, and to show that instead they were taken at a later date. When the motion came on for hearing the court sustained an objection of the defendant to the introduction of any evidence in support of the petition, and plaintiff appeals from this order by special and subsequent notice of appeal. The journal entry states the objection was sustained for reasons contained in the written objections to the reception of evidence, but we are not advised by either party what those objections were. Having in the record before us a full copy of the petition for a new trial, there appears to be two objections which might justify such ruling considering the objections as if they were in effect a general demurrer to the petition. Those very apparent and natural objections, after carefully reading the petition and considering the evidence already introduced on the trial, as shown by the record, are that the newly discovered evidence is cumulative and for the purpose of impeachment or discrediting the testimony of defendant's witnesses, which has regularly been held not to be proper ground upon which a new trial should be granted. (See *Parker v. Bates,* 29 Kan. 597; *Lee v. Bermingham,* 39 Kan. 320, 18 Pac. 218; *Schribar v. Maxwell,* 92 Kan. 306, 140 Pac. 865; and *Lagneau v. Bource,* 101 Kan. 170, 165 Pac. 844.) It is cumulative

because some of the plaintiff's witnesses said, when shown the photographs, that they did not seem to represent the surroundings as they were at the time of the accident, some of them referring to the change as to the weeds, the crossing and the position of the wrecked automobile. A general objection, like a general demurrer, would raise these two and perhaps other objections to the hearing of evidence in support of the petition and perhaps also the question of diligence required and would justify the sustaining of the objection.

Appellee also raised the objection to the review of this feature of the appeal because the action of the trial court after the appeal had been taken was without jurisdiction and that this question is not listed among the errors assigned for review. We need not pass upon the last-named points, which might be regarded as rather technical, because there was sufficient merit to the ruling on even a general objection to approve the action of the trial court in sustaining the objection.

We find no error in the giving or refusal to give instructions and in refusing to grant a new trial.

The judgment is affirmed.