No. 30,923.

James Goodman, a Minor, by His Father and Next Friend, Joseph Goodman, *Appellee*, v. The Kansas City, Merriam & Shawnee Railroad Company, *Appellant*.

(21 P. 2d 322.)

Opinion filed May 6, 1933.

*James E. Smith* and *Clayton M. Davis,* both of Topeka, for the appellant.
*Joseph Cohen,* of Kansas City, for the appellee.

The opinion of the court was delivered by

HARVEY, J.:  This is an action for damages for personal injuries and injury to an automobile which was struck at a crossing by defendant's interurban car.  The jury answered special questions and returned a verdict for plaintiff.  Defendant has appealed.

Defendant's interurban electric railway line extends west from Kansas City, Kan.  Its right of way at the place in question, about a mile west of the city, is adjacent to a paved highway known as Southwest, or Merriam, boulevard.  Extending north from this highway, across defendant's tracks, is a private road to a farmhouse, sometimes spoken of as the Turner road.  On October 1, 1930, plaintiff, then about sixteen years of age, driving an automobile which belonged to his parents, drove to the country to get pears.  Two nuns, whose names he did not know, were riding in the back seat. Justin Walleck, a boy about fifteen years of age, was riding in the front seat with him.  He drove out Southwest boulevard and stopped at a nursery to inquire the way to the farmhouse.  In doing so and returning to the highway he crossed defendant's tracks twice.  He turned off the boulevard on the Turner road, proceeded to the farmhouse, obtained the pears, and was driving back to the boulevard. The road was a winding one through some brush and trees and was a steep incline covered with gravel and rock.  He was driving about ten miles per hour.  He could see the trolley wires and the trolley pole of the interurban car.  When within about fifteen feet of defendant's track he noticed the trolley pole on the interurban car about 100 to 110 feet west of the crossing.  The automobile was equipped with two-wheel brakes, which were in good order.  He applied the brakes, but the automobile slid onto the track.  He shifted to low gear and tried to get off the tracks, but did not have time to do so before he was struck by the interurban car.

"Q. Did you see the interurban car when you were fifteen feet away from the track?  A. I saw the top of the trolley.

"Q. Saw the top of the trolley?  A. Yes, sir.

"Q. And did you stop?  A. I stepped on the brakes, but I couldn't stop.

"Q. You couldn't stop?  A. No, sir.

"Q. Well, did you ever stop?  A. I stopped when I got out to the track.

"Q. Out to the tracks?  A. Into the tracks.

"Q. You stopped on the tracks, did you?  A. Yes, sir.

"Q. Did you come to a complete stop?  A. Well, I don't know, for sure.  I tried to get the car in low there—

"Q. Just answer my question. Did you come to a complete stop? You remember about the occasion? A. Yes, sir.

"Q. And you remember whether you came to a complete stop, don't you? A. Yes, sir.

"Q. Well, did you? A. No, sir.

. . . . . . . . . . . . . .

"Q. Your car was still traveling? A. Yes, sir.

"Q. When you got on the track? A. Yes, sir.

"Q. And then you endeavored to put the car in low? A. Yes, sir.

"Q. How fast was your car going when you got on the track? A. Well, about a mile an hour, or something like that. It was going slow, when we got right there. It was just sliding along.

"Q. Sliding along? Were your wheels sliding? A. Yes, sir.

"Q. And you think you were going about a mile an hour when you got on the track? A. Yes, sir.

"Q. And you endeavored to put it in low? A. Yes, sir.

"Q. Did you put it in low? A. I got it in low; yes.

"Q. Well, after you got the car in low, did you let your clutch out and start up again? A. I didn't have time; the car ran into me at the time.

"Q. Well, how far would it have taken you to stop the car going ten miles an hour on this road where you were, this grade—going down this grade at ten miles an hour—an emergency stop? A. About twenty foot, I imagine.

"Q. It would take you twenty feet to stop it on this grade. And you didn't look for the interurban car until you were within fifteen feet of the crossing? A. No, sir.

. . . . . . . . . . . . . .

"Q. Now, when you reached the track, was your brake on all the time? A. Yes, sir.

"Q. And did your car slide onto the track with your brake on? A. Yes, sir.

"Q. Were you in high, neutral, low or second? A. It was high.

"Q. And did you attempt to shift from high to low? A. Yes, sir.

"Q. Did you have a chance to put it into low and get out of there? A. No, sir."

Justin Walleck testified that they left the farmhouse and started back, and when about fifteen feet from the tracks he saw the top of the trolley pole of the interurban car. At that time plaintiff put on the brakes.

"Q. And what happened to the car, when the brakes were applied? A. The back wheels stopped.

"The Court: What? A. The back wheels stopped, and it skidded.

"Q. All right. Now, how far did the car skid? A. About five foot or three or something like that.

"Q. Then what happened to the car? A. It skidded into the tracks.

"Q. All right. Did it stop skidding before it got onto the tracks? A. No, sir.

"Q. Then where was it when it started to skid? How far from the tracks? A. About seven—five or seven foot.

. . . . . . . . . . . . . . .

"Q. When the car started to skid, could you see any more of the street car than the trolley? A. No, sir.

"Q. Now, when you started to skid, Justin, I want to know how far you were from the street-car tracks. A. When we started to skid?

"Q. Yes. A. About ten foot."

When the automobile was five or ten feet from the track the interurban car was from 110 to 115 feet away, and when the automobile went on the track the interurban car was eighty-five or ninety feet away. The automobile stopped on the track.

A witness, who had formerly worked for the street-car company and operated a car of the type used by defendant, testified that such a car, on practically level track, in dry weather, going at thirty miles an hour, could be stopped in fifty feet. It would take more or less time to act after observing an object, and the fifty feet means from the time the air gets to the brakes until the car stops. That distance would be varied by the particular operating conditions at the time, and the car could not at all times be stopped within fifty feet, even though the track were level. He could not expect a better stop than that.

There was other evidence as to plaintiff's injuries and as to the damages to the car, but since the amount of the verdict, $500, is not complained of—if plaintiff is entitled to recover—this need not be detailed.

Defendant demurred to the evidence. On the hearing of the demurrer plaintiff abandoned all the allegations of negligence in his petition except those pertaining to the doctrine of the last clear chance. The court overruled the demurrer. Defendant then introduced its evidence, the court instructed the jury, and the case was submitted, with the result above stated.

By predicating his right to recover solely on the doctrine of the last clear chance plaintiff necessarily conceded his own negligence in getting on the track in front of defendant's oncoming interurban car. In *Jamison v. Atchison, T. & S. F. Rly. Co.*, 122 Kan. 305, 308, 252 Pac. 472, it was said:

"This doctrine can be invoked in negligence cases only where the party relying upon it has by his own prior negligence gotten himself into a predicament from which his subsequent diligence will not avail to extricate him with-

out injury or damage through the act or delict of another party, but where such other party has a fair opportunity—a last clear chance—to avert or minimize the accident, injury or damage, by the exercise of reasonable diligence after the negligence of the first party has ceased. (*Dyerson v. Railroad Co.*, 74 Kan. 528, 87 Pac. 680, 7 L. R. A., n. s., 132 and note; *Juznik v. Railway Co.*, 109 Kan. 359, 364, 365, 199 Pac. 90; *Williams v. St. Louis-San Francisco Rly. Co.*, ante, p. 256, and citations.)"

See, also, the following cases and the authorities cited therein: *Gilbert v. Railway Co.*, 91 Kan. 711, 718, 139 Pac. 380; *McMahon v. Railway Co.*, 96 Kan. 271, 273, 150 Pac. 566; *Atherton v. Railway Co.*, 107 Kan. 6, 190 Pac. 430; *Gilbert v. Railway Co.*, 109 Kan. 107, 110, 197 Pac. 872; *Mourning v. Railways Co.*, 110 Kan. 417, 204 Pac. 721; *Morlan v. Hutchinson*, 116 Kan. 86, 89, 225 Pac. 739; *Muir v. City Railways Co.*, 116 Kan. 551, 555, 227 Pac. 536; *Engle v. Bowen*, 122 Kan. 283, 285, 251 Pac. 1108; *Dennis v. Kansas City, K. V. & W. Rly. Co.*, 133 Kan. 214, 220, 299 Pac. 941; *Bazzell v. Atchison, T. & S. F. Rly. Co.*, 133 Kan. 483, 300 Pac. 1108.

The doctrine of the last clear chance, as set forth in the authorities cited, may be said to be made up of the following elements: (1) Plaintiff, by his negligence, placed himself in a position of danger; (2) that his negligence had ceased; (3) that defendant seeing plaintiff in a position of danger, or by the exercise of due care should have seen him in such position, by exercising due care on his part had a clear chance to avoid injuring plaintiff; (4) that defendant failed to exercise such due care, and (5) as a result of such failure plaintiff was injured.

The evidence in this case clearly discloses that plaintiff was negligent in at least two respects. *First,* as he was approaching the track he should have looked for an interurban car early enough to have stopped his automobile before he got on the track. This he did not do. It took as much as twenty feet for him to stop his automobile and he did not look for an interurban car until he was within fifteen feet of the track. *Second,* when he saw the car and was too close to the track to stop, instead of letting his car proceed at the rate it was going, which, under the evidence, would have got him across the track in safety, he applied his brakes, slid his wheels, slowed his car down to about one mile an hour on the track, with the brakes still on, shifted to low gear, and was struck. It is clear that his negligence in this respect continued until his automobile was struck. The case is much like that of *Williams v. St. Louis-*

*San Francisco Rly. Co.,* supra; *Jamison v. Atchison, T. & S. F. Rly. Co.,* supra, and *Mourning v. Railways Co.,* supra. In short, there is not much in this case except that plaintiff drove onto defendant's track in front of an oncoming interurban car and did not have time to get across. Certainly the doctrine of the last clear chance cannot apply in such a case. The demurrer to the evidence should have been sustained.

The judgment of the court below is reversed with directions to enter judgment for defendant.