NELLIE HOWARD, *Appellee*, v. THE CITY OF OSAGE CITY
et al., *Appellants*.

No. 17,898.

SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Open Ditch in Street—Evidence*. The plaintiff
alleged that the ditch in which she was injured had prior to
nightfall on the day in question been bridged or filled at
crossings other than the one where the injury occurred. *Held*,
that evidence of the condition in which such other crossings
were left was competent to show how the defendants had
treated the matter of guarding against accident along the line
of the ditch and whether they had used their own usual care
in relation to the crossing in question.

2. ——— *Repairs Made Subsequent to Accident — Competent
Evidence*. Repairing or making a place safe after an ac-
cident has occurred there may properly be shown. The con-
sequent reluctance of parties thus to guard against repeated
injuries for fear they will thereby furnish evidence tending
to show their prior negligence is not deemed of equal im-
portance with protection against injury to life or limb.

3. VERDICT—*Supported by Competent Evidence—Not Disturbed*.
The rules that a verdict or finding supported by competent
evidence must stand, and that city streets and crossings are
made to walk on and to be assumed as safe for the purpose,
followed.

Appeal from Lyon district court. Opinion filed
April 12, 1913. Affirmed.

*C. G. Messerly*, and *J. P. McLaughlin*, both of Osage
City, for the appellants.

*A. M. Harvey, J. E. Addington,* both of Topeka, and
*Charles S. Briggs*, of Osage City, for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff sued to recover for injuries
sustained in falling into a ditch dug by the construc-
tion company along Market street in Osage City. The
answers pleaded contributory negligence. The jury

found for the plaintiff, and answered special questions to the effect that she could not have seen the ditch by looking and exercising ordinary care, or known of its existence. Two complaints are made: that the court erred in permitting testimony touching the conditions of the ditch at other places, and changes made at the place of injury after its occurrence, and that it refused to set aside the findings referred to.

Without stating the facts in detail it is sufficient to say that the injury occurred about seven o'clock at night on October 23, 1909; that certain lights placed as warnings were variously estimated to have been from three and one-half to twenty feet from the crossing. The plaintiff testified:

"I did n't have to step down; as I came to the crossing I hesitated just a moment and I saw a mound of dirt and a path over it, and having seen men go over it ahead of me I went over it, supposing it was all right, and I fell in the ditch. I did not see any ditch until I fell into it; I did not see any lights or any lanterns as I approached the ditch near to it on either side; I did not see any lights; I did not see any lights as near as ten or twenty feet on either side."

On cross-examination she said:

"I did not look for any ditch when I went down to where the dirt quit and come to the level; I did not stop and look for any ditch and I saw no ditch there; I never stopped as I went down over the ditch at any time until I went into the ditch; there was nothing to stop me; I walked right up and over and down into the ditch; I can't say that I was looking up or down; I was looking like anybody would; I was looking ahead; when I was walking over the dirt I suppose I was looking down; I was walking at an ordinary gait; my left foot went into the ditch first; my right foot had just struck the edge of the ditch on the other side; it slipped after it doubled up; one foot had gone directly down, but the right foot doubled up in going down; I did n't see any pipes in there before attempting to step across; I did n't look to see if there was any pipe in there; I did not look for any ditch before I tried to step across it."

Mr. Howard testified:

"I went to the place where they told me she was hurt, and found they had an open ditch there; they had thrown the dirt out to the north and laid the pipe in the ditch; the stones that had been in that crossing were thrown to the south, and it seemed to me there was one on each side of the crossing; the dirt was just as it was thrown out of the ditch; it was piled up there probably twenty to twenty-four inches high; it sloped toward the ditch probably twenty to twenty-four inches, and toward the sidewalk the slope was more gradual as you approached coming down off the sidewalk; it showed that there had been traffic over it during the time they were digging; it must have been in the middle of the day or earlier that they began digging at that opening; there was a light, one that I saw, as I remember, six or eight feet to the east of that foot path on that dirt pile, and a little over to one side of the dirt pile; from the point where the injury was it was over six or eight feet to the line of the dirt pile, but from [where] the injury occurred upon the angle it was ten feet; but on the north side of the pile it did not reflect into the ditch; it threw a shadow across the ditch; I don't think there was any other lantern closer than twenty feet in any direction."

The amended petition alleged that:

"Prior to nightfall on the said 23d of October the said defendants either bridged or filled up the said ditch at points where each of the said crossings intercepted it with the exception of one, and this was a stone crossing used more extensively than any of the others and situated about one-half block east of the right-of-way of the Atchison, Topeka & Santa Fe Railway and at the point where this crossing intercepted the said ditch the said defendants knowingly, carelessly and negligently permitted the said ditch to remain open without being filled up or bridged in any way and exposed without lights or guards to warn persons who might attempt to cross the said Market street upon said crossing."

Under this allegation the court permitted the plaintiff to show how the other crossings were left and guarded on the evening in question, and we think

properly so. It was competent, not for the purpose of showing the condition of the street at other places, but for the purpose of showing how the defendants had treated the matter with reference to guarding other similar crossings near the place of the injury, as tending to show whether they had exercised even their own usual care in respect to the crossing in question.

That repair immediately after an injury may be shown is the settled rule in this state. (*A. T. & Santa Fe Rld. Co. v. Retford,* 18 Kan. 245, 249; *City of Emporia v. Schmidling,* 33 Kan. 485, 6 Pac. 893; *A. T. & S. F. Rld. Co. v. McKee,* 37 Kan. 592, 15 Pac. 484; *City of Olathe v. Mizee,* 48 Kan. 435, 29 Pac. 754.)

The refusal of the trial court to set aside the finding that the plaintiff could not have seen the open ditch by looking and exercising ordinary care and prudence is assailed on the ground that there is no evidence to sustain such finding. The refusal to set aside the other finding already referred to, was not assigned as error. We have quoted certain evidence on this point, and much not quoted was given, and we are not able to say that in the exercise of ordinary care at the time the plaintiff could have seen the open ditch. She testified that she did not see it and the jury by the general verdict found that she was not wanting in the exercise of care, and we find no ground for setting aside their conclusion. It must be remembered that streets and crossings are provided to walk on, and pedestrians may rightfully assume that traps and pitfalls are not left therein, and they are not required to proceed as if in the midst of perils; and when a city or construction company leaves insufficiently guarded a place causing the injury complained of it is not for them to demand immunity because the one injured supposed they had done their duty, and acted accordingly.

The judgment is affirmed.