No. 23,264.

LOUIS JUZNIK, *Appellee,* v. THE KANSAS CITY SOUTHERN
RAILWAY COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Defective Railroad Crossing—Stalled Automobile—Col-
lision with Train—Contributory Negligence—Issues for Jury.* A
crossing of defendant's railroad was in a defective condition. Without
knowledge of its condition the plaintiff drove his automobile upon it,
and when the front wheels dropped into a depression and struck the
further rail, the engine was killed, and he was thrown against the
steering wheel and wind shield with such force as to partially disable
him for a period of thirty seconds. Before he could extricate himself
defendant's freight train, then engaged in switching operations, was
backed upon him, crushing his car and injuring him. Whether he
was in the exercise of reasonable care when he undertook to cross the
track was a fair question of fact for the jury, and whether the train-
men, who knew the conditions of the crossing and could have seen the
peril of plaintiff and stopped the train before striking and injuring
him, were guilty of negligence, was also a jury question; and it is
held that the testimony was sufficient to uphold the findings made in
favor of plaintiff.

2. SAME—*Allegations of Petition—Instruction as to "Last Clear Chance."* Where the plaintiff in his petition set forth the circumstances under which the collision occurred, and defendant alleged that plaintiff's injuries were the result of his contributory negligence, a charge which the plaintiff denied, and proof was offered tending to show that the train was backed upon plaintiff after those operating it saw his helpless plight on the crossing, the court was warranted in instructing the jury as to the doctrine of the last clear chance, although the plaintiff had not stated in words in his petition that he was invoking that doctrine, and although he had not admitted that he was negligent in driving upon the crossing.

3. SAME—*Instructions.* Instructions examined, and held to be free from prejudicial error.

4. SAME—*Instructions.* A reference by the court to a ground of negligence alleged in the petition, but upon which no evidence was offered, is held to be harmless.

5. SAME—*Evidence as to Subsequent Repairs of Railroad Crossing.* No error was committed in the admission of evidence as to subsequent repairs of the crossing made by the defendant.

6. SAME—*Refusal to Submit Certain Interrogatories.* The refusal to submit a special interrogatory which was involved and confusing and contained an assumption of facts not proven, was not error.

7. SAME—*Damages Not Excessive.* Damages awarded are held not to be excessive.

8. REMOVAL OF CAUSE—*Application Properly Denied.* Petitions and bonds for removal of the case were filed by defendant but not within the prescribed time for removal, and the application was denied. Later, at the instance of the plaintiff, all the defendants except the appellant were dismissed from the case. Appellant did not thereafter renew its application to remove nor bring the matter to the attention of the court, but did file an answer setting up an affirmative defense and asking for judgment for costs. *Held,* that the appellant is not in a position to insist that the court was without jurisdiction to try the case.

Appeal from Bourbon district court; EDWARD C. GATES, judge. Opinion filed June 11, 1921. Affirmed.

*John H. Crain,* of Fort Scott, *L. W. Johnson,* of Pittsburg, *Cyrus Crane,* and *Hugh E. Martin,* both of Kansas City, Mo., for the appellant.

*T. W. Clark, C. S. Denison,* both of Pittsburg, *W. P. Dillard,* and *Douglas Hudson,* both of Fort Scott, for the appellee.

Juznik v. Railway Co.

The opinion of the court was delivered by

JOHNSTON, C. J.: The Kansas City Southern Railway Company appeals from a judgment obtained against it by Louis Juznik for injuries negligently caused by backing a train against him and his automobile when he was helplessly stalled on a crossing. The accident occurred at the intersection of a highway and the railroad of defendant in the town of Breezy Hill. It appears that the plaintiff was driving his automobile northward on this highway, which runs north and south, at a speed of about twelve miles an hour, and that as he approached the railroad he slowed his car down to a speed of four or five miles an hour. He alleges and testifies that when fifteen feet from the track he looked up and down the railroad, and seeing no train, he drove upon the crossing. When he reached the track he discovered that the crossing was in bad condition. It was not filled up between the rails with proper material, but loose dirt and dust had been thrown in over the ties, and the automobile dropped four or five inches into loose dirt, dust and ruts of the depression. When the front wheels struck the north rail the engine was killed, and plaintiff was thrown against the steering wheel and wind shield with so much force as to stun him, and in such a way, as he said, to "knock my wind out." When he recovered from the shock, he looked up and saw the train about thirty feet away backing down upon him. Before he could extricate himself and escape from the peril, the rear car struck the automobile and pushed it about forty feet along the track before it was wrecked or the plaintiff injured. The rear car was there derailed, the automobile demolished, plaintiff thrown to one side and injured, while his brother who was seated with him in the automobile was crushed and killed. The defendant was charged with negligence in failing to construct the crossing properly and maintain it in a safe condition as the law requires, in running the train upon the crossing and backing upon plaintiff without signal or warning and without keeping the engine and train under control, and further, without having any brakeman or switchman on the rear of the train. It is insisted by the defendant that the accident and injury were due to the negligence of the plaintiff in driving upon the

track in front of an approaching train when by looking he could have seen it. Not far from the crossing there was a curve in the track and a building near it, and also some hedge trees which at certain points of observation obstructed a view of the track. The jury found that a person seven and one-half feet from the track could see an approaching train a distance of 1,000 feet; at seventeen and one-half feet south of the track he could see a train about 300 feet away; about twenty-seven and one-half feet from it he could see up the track a distance of 150 feet; and at thirty-nine and one-half feet away he could see a train fifty-six feet up the track. The defendant invokes the rule that its negligence, if any, was no excuse for the contributory negligence of a plaintiff who fails to use his senses to protect himself, and that one who attempts to cross a railroad track in front of an approaching train, which he saw or could have seen by looking, and is injured, convicts himself of negligence, and is not entitled to a recovery, although the railroad company may have been negligent in the operation of the train. There is testimony, however, that plaintiff looked for a train when he was only fifteen feet from the track, and that the train was not then in sight. Under the plaintiff's evidence it became a question of fact whether there was negligence in his attempt to cross the track. There is testimony tending to show that even if he had seen the train approaching, there was still ample time to have passed over the crossing in safety if it had been in a reasonably safe condition. It was not a mail, express or passenger train, but was one which was moving slowly, at a rate of about five or six miles an hour, engaged in switching operations. He was unaware of the condition of the crossing and had a right to assume that it was in a fit condition, and that he could pass over it in safety, until he discovered the latent defects, and that was when he dropped into the soft dirt and ruts between the rails. Considering the speed of the train and that half a minute elapsed after plaintiff was thrown against the steering wheel and wind shield before he regained his wind, and the fact that the train was still some distance from the crossing, there was ground for the inference that there was ample time for him to have passed over a safe crossing and without negligence in making the effort. A coming train might be within the view of a driver approaching a cross-

Juznik v. Railway Co.

ing for several minutes before the arrival of the train there, and it would hardly be contended that reasonable prudence required him to await the passage of a train before undertaking to cross in front of it. Of course, it should not be undertaken unless there is ample time to do so in safety. The condition of the train, the distance, character and speed of it, the condition, power and speed of the automobile, and plaintiff's lack of knowledge or notice of the condition of the crossing, all enter into the problem of whether he should have gone forward or await the passing of the train, and whether he was in the exercise of reasonable care in making the attempt was a fair question of fact for the jury. Under the circumstances we think the jury had a substantial basis for finding that plaintiff was free from contributory negligence in driving upon the crossing, and in the handling of his automobile.

Again there was ground for a finding that the defendant was negligent in failing to stop its train after the plight of the plaintiff on the track was or should have been discovered. There was testimony to the effect that he was stalled upon the crossing for thirty seconds or more before the train struck him. The trainmen knew of the dangerous condition of the crossing, and the end of the train was from 220 to 440 feet away when plaintiff's machine dropped into the depression and his engine was killed. One witness said that when he discovered that plaintiff's automobile was stalled upon the track the train was still sixty feet away. It was being run at a rate of about five or six miles an hour and, according to the evidence of the trainmen, it could have been and actually was stopped in a distance of forty feet. The day was clear, the view was unobstructed at this time, and the trainmen admitted that they saw him approach and stop upon the track. According to this evidence there was ample time for the trainmen to have stopped the train after seeing the plaintiff stalled on the track, before colliding with him, and under it there was ground for the jury to find that reasonable care was not exercised to prevent the collision and the injuries sustained by the plaintiff. Evidence was introduced, and is greatly relied upon by the defendant, which is in direct conflict with that of the plaintiff respecting the acts and omissions of the trainmen as well as the plaintiff at the time and place of the accident, but we must accept that which

was accepted and believed by the jury, and which tends to uphold their findings and verdict.

It is contended that the court erred in submitting the case to the jury on the doctrine of the last clear chance. A reason assigned is that it was not specifically mentioned in the pleadings. The petition set out the circumstances under which the collision occurred and alleged that it was due to the negligence of the defendant. In its answer the defendant pleaded that it was caused by the contributory negligence of the plaintiff, a charge which plaintiff denied. This raised an issue as to what was the immediate, proximate cause of the injury and warranted the introduction of evidence and the application of the doctrine of what is designated as "the last clear chance" or "discovered peril." The question then arose as to what was the proximate cause of the collision. If the defendant was negligent as pleaded and there was contributory negligence on the part of the plaintiff, and his negligence was concurrent and contemporaneous with that of the defendant up to the moment of the injury, there can, of course, be no recovery. On the other hand, if plaintiff negligently drove upon the crossing into a place of danger from which he could not extricate himself, where his negligence ceased, and defendant discovered his plight in time to have avoided injuring him by the exercise of reasonable care, the negligence of the defendant is deemed to be subsequent to that of the plaintiff and to be the proximate cause of the injury. Under these circumstances there may be a recovery notwithstanding the original and remote negligence of the plaintiff. As decided in *Dyerson v. Railroad Co.*, 74 Kan. 528, 87 Pac. 680:

"The test is, What wrongful conduct occasioning an injury was in operation at the very moment it occurred or become inevitable? If just before that climax only one party had the power to prevent the catastrophe, and he neglected to use it, the legal responsibility is his alone. If, however, each had such power, and each neglected to use it, then their negligence was concurrent and neither can recover against the other." (p. 536. See, Note in 7 L. R. A, n. s., 132.)

It was not necessary for the plaintiff to plead in words that he was invoking the doctrine of the last clear chance. It was enough that he had alleged facts and charged negligence to which the doctrine was applicable. It was not necessary even that he should admit that he was negligent in driving into a

dangerous place, but it was enough to show that his negligence had culminated, and that the subsequent negligence of the defendant after discovering his peril was the immediate, efficient and proximate cause of the injury. (*Crowley v. The Burlington, Cedar Rapids & Northern R'y Co.*, 65 Iowa, 658; *Nathan v. Railway*, 118 N. C. 1066; *Jensen v. Railroad Co.*, 44 Utah, 100.)   This doctrine is but an element of proximate cause, and the allegations in plaintiff's petition were sufficient to charge that defendant's negligence was the independent and proximate cause of the injury, and being supported by evidence to the effect that after plaintiff's negligence had ceased, if he was negligent, and that the defendant failed to exercise reasonable care to avert the injury after discovering his peril, warranted the court in instructing the jury as to the doctrine of the last clear chance.   Evidence of the kind named was introduced, without objection by the defendant, and if the petition had been defective as to this feature of the case the defendant was hardly in a position to claim that the doctrine was not applicable.   When the question was raised at the end of the trial, the court as a matter of safety permitted the plaintiff to amend his petition in this respect, and of that action complaint is made.   If an amendment had been necessary there was no good ground to complain of it, since it only conformed to the proof that had been introduced.

There is further complaint of the instructions on the subject and particularly as to a statement in the 24th instruction that—

"If you find from the evidence that only the defendant had the power to avert the collision and neglected to do so, and you further find that the plaintiff at the time of the collision was doing all in his power to get his automobile off the track and avert the collision, then the plaintiff is entitled to recover."

It is contended that in this the court took out of the case any negligent acts of the plaintiff preceding the stalling of the automobile on the railroad.   The instructions are all to be considered together.   In the part criticized the court was speaking of concurrent negligence and in that connection advised the jury in the same instruction that—

"If, however, you find from the evidence that the plaintiff and defendant each had the power at the time of the collision to avert the collision, and each neglected to use such power, then their negligence

would in such case be concurrent negligence and recovery cannot be had herein by said plaintiff, if you find such facts to exist."

In other portions of the instructions, the jury were fully and fairly advised as to contributory negligence which would defeat a recovery and it is plain that the jury could not have misunderstood the charge. There are other criticisms of the instructions, but an examination of the entire charge satisfies us that there was nothing in it to afford any ground of reversible error.

Another assignment is that the court erroneously permitted the jury to find against defendant because it did not have a watchman at the crossing, when there was an absence of evidence upon which to base such a finding. In stating the issues formed by the pleadings the court casually referred to the averment in plaintiff's petition that the defendant negligently failed to maintain a watchman at the crossing. No evidence had been introduced tending to show that a watchman was not maintained, or that the absence of one caused or contributed to the injury. There was in fact no evidence on the subject. The mention by the court of this alleged ground of negligence upon which there was no evidence cannot have misled the jury. It has been decided that an instruction covering questions on which there is no evidence is harmless. (*City of Indianapolis v. Cauley,* 164 Ind. 304; *Indianapolis Traction, etc., Co., v. Ulrick,* 45 Ind. App. 149.)

Error is assigned on the admission of evidence of subsequent repairs of the crossing. Evidence of this kind may be received for what it is worth. (*Howard v. Osage City,* 89 Kan. 205, 132 Pac. 187; *White v. Cloak & Suit Co.,* 106 Kan. 239, 187 Pac. 670.)

Another assignment is the refusal of the court to submit the question, "Was the rumble or noise made by the coal cars as they approached the crossing, equal to or less than, or greater than the noise made by the Ford engine and automobile, to the ear or hearing of the plaintiff?" This question was properly rejected. There was no evidence as to the volume of the noises made by train or automobile, or as to a comparison of such noises, or yet as to the effect they had on the ear of the plaintiff. It was an involved and puzzling question and contained an assumption of facts not proven.

The contention that the damages awarded were excessive cannot be sustained. The amount was $13,250. The plaintiff was 49 years of age, and taking the testimony produced in his behalf, his injuries were of a serious and permanent character.

Defendant further contends that the trial court was without jurisdiction in the case for the reason that petitions and bonds for removal to the Federal court had been filed. It appears that as the case was brought, three coal companies and one Ed Roberts, as well as the railroad company, were named as defendants. The petitions and bonds for removal were not filed within the time in which the defendants were required to answer, as the Federal judicial code prescribes, and therefore the applications to remove were denied. Afterwards the plaintiff dismissed the case as to all of the defendants other than the railroad company, and that company now contends that upon the dismissal of these parties the case became removable and it was the duty of the court to order a removal upon the application previously made. The defendant never renewed the application after the dismissal of the parties nor was the matter of removal afterwards brought to the attention of either the district court of Crawford county, where the action was instituted, or the district court of Bourbon county, to which it was transferred on a change of venue. Instead, the defendant submitted itself to the jurisdiction of the state court, setting up an affirmative defense and asking judgment for costs. It is not now in a position to insist that the state court was without jurisdiction.

All the assignments of error have been examined, and it is held that no substantial error is found in any of them.

The judgment is affirmed.