THE CITY OF KANSAS CITY v. EMMA C. SLANGSTROM.

1. DIVERSION OF STREAM—*Liability of City.* While a city has power, where it is deemed necessary, to divert a stream passing through its limits from its natural course, and to confine it to a narrower channel, *in doing so it must use reasonable care to prevent injury to others,* and if damage results to the owners of private property from its negligence or wrongdoing in this respect, it will be liable for the loss.

2. CONCURRENT WRONGDOING—*Liability, Joint and Several.* Where two or more parties, by their concurrent wrongdoing, cause injury to a third person, they are jointly and severally liable, and the injured party may at his option institute an action and recover against one or all of those contributing to the injury.

3. SPECIAL FINDINGS, *How to be Considered.* Special findings returned by the jury are to be considered together, and, if possible, are to be so construed as to harmonize them, and to uphold the general verdict.

4. FINDINGS, *Sustain Verdict and Judgment.* The findings examined, and *held* to show that the damages recovered were the result of the concurrent wrongdoing of the city and another party, for the whole of which either was liable, and that the findings are sufficient to sustain the general verdict and the judgment.

*Error from Wyandotte District Court.*

THIS action was brought by *Emma C. Slangstrom* against *The City of Kansas City* and the Orchard Place Land Company to recover damages for injury to her property resulting

from an overflow of the same, and which was caused by the wrong of the defendant. It is averred that the property is located close to Splitlog creek, a natural water course, and that the city, in improving two of its streets, had established a grade and made an embankment below the property and across the creek, which obstructed the flow of the water, and caused it to back up and overflow the property. It is alleged that a small sewer was built through the embankment or grade with a view of carrying off the water, but that it was small and entirely insufficient to permit the flow of water which usually accumulated in the stream. There was a further averment that the Orchard Place Land Company, with the knowledge and approval of the city, extended the sewer built by the city through the private property of the plaintiff across the water course without making any sufficient passageway for the escape of the water which might be reasonably expected to flow through the channel of the stream  The sewer, being insufficient in size and negligently built, closed up and fell in under pressure of the earth, completely obstructing the water course, and backed the water up to the height of 42 feet, until it escaped over the top of the embankment, and over the private property of the company. It is alleged that on May 18, 1889, during the spring rains, and by reason of the obstructions mentioned, a great body of water accumulated, which completely overflowed and submerged the premises in question, whereby the plaintiff below was injured to the amount of $500, for which judgment was asked. Separate answers were filed by the city and the defendant, in which each denied generally the averments of the petition, alleged that the wrongs, if committed at all, were not committed by the defendants jointly, and pleaded a misjoinder of causes of action. A trial was had with a jury, and at the conclusion of the evidence the plaintiff below asked and obtained leave of court to dismiss her action as to the Orchard Place Land Company without prejudice, and thereupon the city asked the court to discharge the jury and set the case down for trial again upon the issues joined as between the plaintiff and the

city, which request was refused.    The cause was submitted to the jury, which returned a general verdict in favor of the plaintiff, assessing her damages at $240, and accompanying it gave answers to particular questions of fact that were submitted to them at the instance of the city.    The special findings of fact are as follows:

"1.  Did the defendant city construct a sewer 4 feet in diameter, a distance of 150 feet, beginning on the north side of Tenney avenue and extending across said avenue onto the land of the Orchard Place Land Company a distance of about 50 feet?    Yes.

"2.  Did the defendant, the Orchard Place Land Company, a short time after the completion of the sewer made by the city, construct a sewer which connected with the south end of the sewer made by the city, and extending southeast a considerable distance, through land owned by it?    Yes.

"3.  Did the Orchard Place Land Company have anything to do with the construction of the sewer built by the city?    No."

"7.  At the time of the high water that occasioned the injury complained of, was the sewer constructed by the Orchard Place Land Company broken down for a considerable distance, so that the water could not run through it?    Yes.

"8.  At the time of the high water that occasioned the injury complained of, was the sewer made by the city in a sound and substantial condition?    No.

"9.  Did Mr. Keys, about 10 days or a few weeks before the flood that caused the injury complained of, enter the sewer made by the defendant city, at the north end, and go through its entire length, and go some distance into the sewer constructed by the Orchard Place Land Company, until he reached a point where it had broken?    Yes.

"10.  At the time Mr. Keys went through the sewer made by the city, was the portion made by the city free from obstacles?    Yes.

"11.  At the time of the flood that occasioned the injury complained of, what was there, if anything, to prevent the water from entering the sewer made by the defendant city at the same place where Mr. Keys had entered it 10 days or a few weeks before?    Mud and other trash.

"12.  At the time of the high water that occasioned the injury complained of, did the water rise to a height of about 18

feet above the lower part of the north end of the sewer made by the defendant city? Yes.

"13. If, at the time of the flood that occasioned the injury complained of, the portion of the sewer constructed by the defendant company had been free from obstruction, would the pressure and flow of the water have been such as to have prevented the accumulation of earth in front of the north end of the sewer made by the defendant city? Yes.

"14. Was the grading up of Tenney avenue the joint act of the defendants, or was it exclusively the act of the defendant city? Yes.

"15. Was there any defect in the manner in which the work was done on that part of the sewer which was built by the city? No."

"17. Was the construction of the sewer by the defendant company the joint act of both the defendants? No."

"19. If the sewer constructed by the defendant city had remained entirely free from obstruction, would not plaintiff's premises have been flooded just as they were by reason of an obstruction in that portion of the sewer built by the company? Yes.

"20. Did the size of the sewers have anything to do with the overflow of the plaintiff's premises? Yes.

"21. If the last question be answered in the affirmative, state in what way the size of the sewer contributed to such overflow. Not large enough.

"22. What was the direct, immediate cause that in fact did cause the overflow of plaintiff's premises? Three days' rain.

"23. Did the defendant city and the defendant company do anything jointly that caused the injury complained of by plaintiff? No."

"25. How long did plaintiff's premises remain submerged? Three or four weeks.

"26. To what height did the water rise above the ground on plaintiff's premises. Ten feet.

"27. If both sewers had remained free from obstruction, would plaintiff's premises have been submerged? Yes.

"28. If the last prior question be answered in the affirmative, the jury are requested to answer the three following questions:

(a) If both sewers had remained unobstructed, would the water have risen so high on plaintiff's premises as it did? No.

(*b*) If both sewers had remained free from obstruction, would the water have stood so long on plaintiff's premises as it did?   No.

(*c*) If both sewers had remained unobstructed, would plaintiff's premises have been injured to the extent they were? No.

"30. If the sewer made by the defendant city had remained free from obstruction, would the water have stood as long on plaintiff's premises as it did?   No.

"31. If the sewer constructed by the defendant company had remained free from obstruction, would the water have stood as long on plaintiff's premises as it did?   No.

"32. If the sewer made by the defendant company had remained unobstructed, would the plaintiff have been injured to the same extent that she was?   No.

"33. Would the water have stood so long on plaintiff's premises but for the obstruction in that part of the sewer which was built by the defendant company on its own land? No.

"34. Would plaintiff's injury have been lessened but for the obstruction in that part of the sewer that was made by the defendant company on its own ground?   Yes.

"35. In your verdict, did you allow anything on account of the warping of plaintiff's house in consequence of the settling of the foundation; if so, how much?   $25.

"36. If the premises had remained submerged but a few hours, would the foundation of plaintiff's house have settled so as to warp plaintiff's house, as described by plaintiff's witnesses?   No.

"37. Did you allow anything on account of the warping of plaintiff's doors and windows?   Yes.

"38. Would plaintiff's doors and windows have been warped if the premises had remained submerged but a few hours?   No.

"39. Did you allow anything for the fence posts on plaintiff's premises?   Yes."

"41. How high did the water rise above plaintiff's floor? Four feet.

"42. In your verdict, do you allow plaintiff anything for the expense of taking up and replacing the floor?   Yes.

"43. If plaintiff's floor had remained submerged but a few hours, would it have been necessary to take up and replace the floor?   No.

"44. Would the plaintiff's floor remained submerged more than a few hours but for the obstruction in the sewer made by the defendant company? No.

"45. Would plaintiff's premises have been submerged but for an obstruction in the sewer made by the defendant company? No, not so much.

"46. Would plaintiff's floor have been submerged at all but for an obstruction in the sewer made by the defendant company? Yes.

"47. Would plaintiff's floor remained submerged more than a few hours but for obstructions in the sewer made by the company? No.

"48. Did the water rise any higher or remain any longer by reason of any defect either in the size or construction of the city's sewer, or by reason of any obstructions there, than it would have done by reason of the obstruction in the company's sewer, even though the city's sewer had been perfect in all respects and free from obstruction? Yes.

"49. State precisely each and everything that was done by the city, if anything, which would render the city responsible for the obstruction in the sewer made by the company. By filling Tenney avenue and not putting in a sewer sufficient to convey the water off.

"50. Did Tenney avenue, a street of the defendant city, extend across Splitlog creek? Yes.

"51. Was the grade of said street regularly established by the defendant city? We do n't know.

"52. In order to bring said street to the established grade, was it necessary to fill in said street to the height it was filled? We do n't know."

"55. Was the sewer in question put in under the supervision of the city engineer? Yes.

"56. Was there a time after the sewer constructed by the defendant company had become permanently obstructed, and before the flood which occasioned the injury complained of, when the city's sewer was in such condition as to have permitted the free flow of water through it, if the obstruction in the company's sewer had been out of the way? Yes."

Judgment having been rendered against the city, a motion for a new trial was duly filed, which was overruled. *The City* comes to this court.

*James M. Rees*, and *K. P. Snyder*, for plaintiff in error.
*True & True*, and *W. H. Littick*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: In improving a street of Kansas City, where it intersects Splitlog creek, the municipal authorities built an embankment across the bed of the stream, and the only provision made for the flow of water was the construction of a small and insufficient sewer or culvert through the embankment, and which was extended by the Orchard Place Land Company through its premises. The portion of the sewer built by the company upon its property broke down, thus choking up the only opening left in the embankment for the passage of the water. The obstruction so placed across the stream backed up the water to such an extent as to overflow Slangstrom's property, and to cause material injury. In bringing an action to recover damages, the city and the company were both joined as defendants, and it was charged that it was the combined wrongdoing of both parties which occasioned the injury for which a recovery was sought. Before the case was finally submitted to the jury by the court, the company was dismissed from the action without prejudice, and the jury found that the damages occasioned by the city, and for which it was responsible, amounted to $240. A great many special questions were submitted to the jury, many more than were needed, but the city now complains that still others should have been submitted and answered. It is clear from the facts found by the jury that the acts of both parties contributed to cause the obstruction of the stream which resulted in the overflow and injury.

Complaint is made that the plaintiff below was permitted to dismiss the action as against the land company and proceed against the city alone as if it was a joint action, and as if the city was liable for the acts of the land company. In the same connection, objection is made to an instruction to the effect that if the plaintiff's property was injured by over-

flow caused by the wrongful acts of the city, or of the city and land company jointly, the jury might find for the plaintiff against the city, and assess the damages for the whole of the injury. There is no reason to complain of this instruction if the evidence tended to show that the injury was the result of the concurrent action of both parties. It is well settled that where two

2, Concurrent wrongdoing— liability, joint and several.

or more parties, by their concurrent wrongdoing, cause injury to a third person, they are jointly and severally liable. It is optional with the injured party to proceed against one or all of those contributing to the injury, as any one who aids and assists in committing the wrong is liable for the whole. (*Westbrook v. Mize*, 35 Kas. 299; *Fish v. Street*, 27 id. 273; *Sharpe v. Williams*, 41 id. 56; *Hillman v. Newington*, 57 Cal. 56; *Bryant v. Carpet Co.*, 131 Mass. 491.) If the action of the city in no way contributed to the injury, the doctrine of the case relied upon, of *Kansas City v. Brady*, 52 Kas. 297, would apply; but the findings of the jury show that the city was primarily and largely responsible for the overflow. It is found that it built the embankment across the water course, leaving an insufficient opening for the passage of water; and there is a finding that the sewer which the city made was not in a sound and substantial condition; that it was obstructed at the time of the injury, and that the overflow was largely caused by its insufficiency in size. It is found substantially that the premises of plaintiff would have been overflowed if both sewers had remained free from obstruction. It is true the water would not have risen so high nor remained so long over the premises in question if the land company had not completed the obstruction which the city commenced. As the acts of either one would have occasioned injury, and as both contributed in obstructing the stream, a joint liability arises against them. It did not devolve upon the plaintiff to ascertain or define how far the wrongdoing of each contributed to the injury, nor was it necessary that the relative liabilities of each should be adjusted in this proceeding. There are findings which state that the city and company did not act jointly in erecting the embank-

ment or in constructing the sewer, and it is argued that these show that there is no joint liability, and make the rulings of the court respecting such liability erroneous. All

3. Special findings, how to be considered.

of the findings are to be considered together, and, if possible, are to be construed so as to harmonize them and uphold the verdict. The findings fairly admit of an interpretation that, while the parties did not work together upon the same part of the obstruction nor at the same time, still they both together constructed and completed a barrier which resulted in choking up the water course and in submerging the premises of the plaintiff. The fact that they did not act at the same time and upon the same part of the obstruction is immaterial, when it appears that the wrongdoing was concurrent and combined in producing the injury. The

1. Diversion of stream—liability of city.

power of the city to divert a stream passing through its limits from the natural course and to confine it to a narrower channel is undoubted, but in doing so it must use reasonable care to prevent injury to others.

In the absence of the evidence, we cannot say the court committed error in the instructions, as those given do not appear to be inconsistent with the pleadings or with the findings of the jury. The court charged that if the injury was wholly caused by the land company, and that the city did not unite in causing the unlawful obstruction of the water course and the resulting injury, it was not liable; and the further instruction was given, that if each were guilty of wrongful acts which did not concur, the plaintiff could only recover from the city such damages as resulted from the act of the city. If there was no concurring negligence, it cannot be said — without the evidence — that the damages awarded by the jury include anything beyond what resulted directly from the act of the city; but we do not rest the decision upon that view,

4. Findings, sustain verdict and judgment.

as it sufficiently shows that the injury was the result of the concurring wrongdoing of the city and the company. There are objections to the refusal to submit certain special questions which were re-

quested by the city, but, without the evidence or a statement of what it was, it cannot be said that they were necessary or proper, nor can it be said that the refusal to require more definite answers to two questions which were submitted was error. Upon the whole record we think a sufficient number of questions were submitted and answered, and that no material error was committed by the court during the trial.

The judgment will be affirmed.

All the Justices concurring.