THE ARMOUR PACKING COMPANY *et al.*
v. S. K. HOWE.
**No. 13,498.**   (75 Pac. 1014.)

SYLLABUS BY THE COURT.

1. FORCIBLE ENTRY AND DETAINER—*Jurisdiction of City Court.*
Where a city court, having the jurisdiction formerly vested in
justices of the peace, acting without power, makes a void order
purporting to certify a case of forcible ·entry and detainer to the
district court for trial, the jurisdiction in legal contemplation re-
mains in the city court, and its exercise of jurisdiction may be re-
sumed without the issuance or service of new process. ·

2. ———— *Complaint—Rules of Pleading in Justice's Court.*
The strict and technical rules of pleading are not applied to com-
plaints in actions of forcible entry and detainer before justices of
the peace. ·

3. ———— *Sufficient Complaint.*   Ordinarily, a complaint setting
forth a charge of an unlawful and forcible entry and detainer in
the language of the statute will be sufficient. '

4. JURY AND JURORS— *Special Findings Not Inconsistent.* 'Spe-
cial findings of a jury may be viewed and interpreted in the light ·
of the testimony and other proceedings, and those under consid-
eration, when so viewed, are found not to be inconsistent with
each other or with the general verdict.

Error from Wyandotte district court ; E. L. FISCHER,
judge.   Opinion filed March 12, 1904.   Affirmed.

*Thomas J. White,* for plaintiffs in error.

*Moore & Berger,* and *L. W. Keplinger,* for defendant
in error.

The opinion of the court was delivered by

JOHNSTON, C. J. :   This was an action of forcible en-
·try and detainer, involving the possession of a part of
what was an island in the Missouri river, which, by
accretions, became connected with the Kansas shore.
S. K. Howe claims to have taken possession of the
land in 1889 and to have held it until December, 1895;

when the Armour Packing Company and George W. Tourtellot unlawfully and forcibly put him off the place and entered into the possession of the same. Howe brought this proceeding in one of the city courts of Kansas City, Kan., having the jurisdiction formerly vested in justices of the peace. After a futile attempt by the defendants to remove the cause to the federal court, they filed a bill of particulars, alleging that the title and boundaries of real estate were in dispute, and in that way procured an order of the city court, certifying and transmitting the case and papers to the district court. That court went through the forms of a trial, and, from the decision rendered, proceedings in error were instituted in this court. It was here determined that the statutory provision authorizing the certification of cases from a justice of the peace to a district court where title and boundaries of land are in dispute has no application to cases of forcible entry and detainer, and therefore the district court never acquired jurisdiction of the case ; and, further, that there was no jurisdiction in this court to review the rulings of the district court. The proceeding was therefore dismissed. (*Armour v. Howe*, 62 Kan. 587, 64 Pac. 42.) When the mandate of dismissal was returned to the district court, that tribunal, in turn, sent the papers in the case to the city court and adjudged the costs incurred by the invalid removal of the cause to the defendants. There is complaint as to the adjudging of costs against defendants, but no proceeding in error was prosecuted from the order. The city court resumed the exercise of jurisdiction, and on change of venue the cause finally reached a justice of the peace of Wyandotte county, where judgment was given in favor of the defendants. Howe took an appeal to the district court, and, on a trial there to a

jury, verdict and judgment were given in his favor, and many of the rulings there made are assigned as error.

It is contended that the jurisdiction of the case was surrendered and lost at the time of the attempted certification of it to the district court. About three years elapsed from the invalid certification of the case before it was decided that the district court was without jurisdiction and before that court transmitted the papers back to the city court. No new process was issued or served when the papers were returned, and the parties came in upon notice that the proceedings in the case would be resumed. The defendants objected to the jurisdiction of the lower court over them at every step until the case reached the district court, and there also the same objection was urged. Jurisdiction of the case was never, in fact, lost by the city court. There was no power in that court to certify the case up, nor in the district court to acquire jurisdiction of it. Jurisdiction, once acquired, remains until a final disposition is made of the case in a manner recognized by law. Not having power to transfer the case, the pretended order of transfer was a nullity and the original jurisdiction of the city court was never disturbed. It was somewhat like an attempted removal of a case not removable from a state court to the federal court. In such a case the state court retains jurisdiction of the cause, notwithstanding the proceedings for removal may have taken the papers in the case to the federal court. (*Fife v. Whittell,* 102 Fed. [C. C.] 537; Dillon on Removal of Causes, 5th ed., § 143.)

The illegal order procured by defendants suspended the exercise of jurisdiction, but it was competent for the court at any time to renew the proceedings and

the exercise of the jurisdiction which had always remained. The fact that the papers were illegally transmitted and were out of the possession of the city court for a time, and that the cause was not on the docket for about three years, did not divest the court of jurisdiction. (*College v. Cary*, 35 Ohio St. 648.)

The next point presented is that the complaint failed to state a cause of action because it did not sufficiently allege that Howe was in possession when the unlawful and forcible entry was made. The complaint is brief and somewhat informal. It alleges that the defendants "did unlawfully and forcibly enter into the following-described lands," describing them, and have ever since held possession of them by force; and, further, that plaintiff gave defendants such a notice as is required by law to leave the premises, and "that the said S. K. Howe was then, and has ever since been, and still is, entitled to the possession of said premises." The fact that he was in possession when the unlawful entry was made is not as fully stated as good pleading would require. The proceeding, however, is a summary one for the speedy adjustment of controversies about possession, and, as it is cognizable before justices of the peace not familiar with pleading, it would indicate that it was never intended that the strict and technical rules of pleading should be applied to complaints in these actions. The averments in the complaint are substantially in the language of the statute. It provides that "the summons shall not issue herein until the plaintiff shall have filed his complaint in writing under oath with the justice, which shall particularly describe the premises so entered upon or detained, and shall set forth either an unlawful and forcible entry and detention, or an unlawful and forcible detention after a peaceful or law-

ful entry of the described premises.'' (Gen. Stat. 1901, § 5398.)

If this were a criminal proceeding, as it is in some jurisdictions, a complaint in the language of the statute would suffice, and it would seem that it should be enough in a civil summary proceeding before a justice of the peace, whose judgment is no bar to another action between the same parties on the same issue. Under a statute like ours, the supreme court of Oklahoma has held that a complaint in the language of the statute was sufficient. (*Richardson et al. v. Penny*, 6 Okla. 328, 50 Pac. 231.) Apart from this consideration, the objection to the sufficiency of the pleading was late. There had been several trials of the case on the complaint as it stood, and in the trial before the justice of the peace from which the appeal was taken to the district court, where the last trial was had, the defendants below joined in a stipulation that the cause should be submitted to the justice for his decision upon the evidence introduced and transcribed by the stenographer in the first trial of the case in the district court, and the evidence included that of the plaintiff as to possession. In this stipulation the defendants in effect treated the complaint as sufficient to present the question of possession, and submitted that issue to the court. Under the circumstances, we think the demurrer to the complaint, and the objection to the admission of evidence under it, were properly overruled by the court. The court subsequently allowed the amendment of the complaint, but as it was originally sufficient the questions sought to be raised under the amendment are immaterial.

Exceptions were taken to rulings made as to the admission of testimony, but they are not deemed to be important. It is strongly urged that the evidence

in behalf of Howe did not establish a *prima facie* case in his favor, and that a demurrer thereto should have been sustained. There was testimony that Howe took possession of the island in 1889, and that he has continued to occupy it and assert possession of it ever since that time. He built houses and fences, drove stakes to mark boundaries and promote accretions, and drove pilings to prevent the washing away of the land. Soon after he located on the island, others came upon it and made claims to all or parts of it. He purchased the rights of some, compromised with others, and contested in the courts over the claims of still others. The struggle to hold the land was not confined to these claimants, for sometimes the rise in the river greatly changed the boundaries of the land and washed away his improvements. In the efforts to hold the land as against the encroachments of the river and the claims of others, Howe appears to have led a somewhat strenuous life, but it cannot be successfully asserted that there was no evidence to sustain his claim of possession. The other side claimed, and offered testimony tending to show, that he was little better than an intruder and trespasser; that his possession was of a fitful and scrambling kind, and that it was not such a peaceful and actual possession as would support an action of this character. The evidence on most of the points in controversy was contradictory and conflicting, but the jury settled these conflicts in favor of Howe. We cannot say that error was committed in overruling the demurrer to the evidence. The case appears fairly to have been submitted to the jury and no material error was committed in any of the rulings on the instructions.

Complaint is made that the special findings were not sustained by the evidence, and that they are con-

flicting with each other and with the general verdict. Some of the questions submitted appear to be of little materiality. The twelfth finding is said to be out of line with others, and such as should defeat the judgment. To the question, "Was the plaintiff, S. K. Howe, in the peaceful possession or occupancy of the land described in the complaint on the 23d day of December, 1895?" the jury answered "No." It is said that a mistake was made in copying this answer into the record; but assuming it to be correct, we think it is not irreconcilable with the other findings or with the verdict, when viewed in the light of the testimony and other proceedings. The eleventh finding is that Howe was in possession of the land on the 22d day of December, 1895; the thirteenth is that he had held peaceful and exclusive possession of the land west of the state line; and the fourteenth is that he had held peaceful and exclusive possession of the land from 1889 until December 23, 1895. The unlawful forcible entry was alleged to have been made on the 23d day of December, 1895, and it was shown that defendants put Howe off the land on that day and held possession themselves. From all the findings, it would appear that the jury meant that Howe was in the possession of the land on December 22, 1895, and in fact from 1889 until December 23, 1895, when he was forcibly ejected from the land, and that on that day the defendants took and held the possession. Viewed in this light, there is no inconsistency with the other findings or with the general verdict, and we discover nothing substantial in the other objections to the findings.

The judgment will be affirmed.

All the Justices concurring.