No. 23,444.

W. J. Brown, *Appellee,* v. The Kansas Electric Utilities Company, *Appellant.*

SYLLABUS BY THE COURT.

1. Negligence—*Street-railway Crossing—Stalled Automobile—Special Findings Interpreted.* A fair interpretation of special findings of the jury is that while plaintiff was guilty of negligence in stalling his automobile on the street-car track at a crossing, the motorman operating a street car which collided with the automobile was negligent in failing to stop his car after the negligence of the plaintiff had ceased, in that he had time and opportunity to have stopped his car and prevented the collision after the peril was discovered.

2. Same. A special finding that an injury was caused by one kind of negligence does not preclude reliance on another ground which, according to other findings, the jury has found was established.

3. Same—*Interpretation of Special Findings.* Obscurity or slight inconsistency in special findings does not necessarily require the overthrow of a verdict. All findings are to be considered together, and if one interpretation points to inconsistency with the verdict and they are fairly susceptible of another which harmonizes with the verdict, the latter should be adopted.

Appeal from Lyon district court; William C. Harris, judge. Opinion filed January 7, 1922. Affirmed.

*H. E. Ganse,* and *Gilbert H. Frith,* both of Emporia, for the appellant.
*I. T. Richardson,* and *Owen S. Samuel,* both of Emporia, for the appellee.

The opinion of the court was delivered by

Johnston, C. J.: This action was brought by W. J. Brown to recover from the Kansas Electric Utilities Company damages which resulted from a collision of plaintiff's automobile with a street car of the defendant. It was alleged that as plaintiff's wife was driving his automobile down Congress street approaching Sixth street, on which there are street-car tracks, she did something that killed the engine and she was unable to start it at once. A street car was then approaching the crossing at a speed of thirty or forty miles an hour in violation of an ordinance prescribing a speed of twelve miles per hour, and the motorman recklessly ran the car against the automobile wrecking it and injuring the occupants. It was charged that

the defendant was negligent in failing to provide proper equipment for controlling and stopping its car and also in the manner of handling the car, especially in running it at an excessive speed, and further, in failing to keep a proper lookout for vehicles on the crossing. It is alleged that if he had done so he could have seen the plight of plaintiff and stopped the car before colliding with the automobile.

The defense set up was that the collision and injuries resulted from the want of care of the plaintiff and his wife. The verdict of the jury was in favor of the plaintiff, and with it special findings of fact were returned upon which a judgment for plaintiff was rendered for $335.15. The defendant asked for judgment on the special findings and, this motion being refused, it brings the special findings here without the evidence and insists that they were such as to compel a judgment for defendant. The following are the special findings:

"1. Do you find the defendant guilty of any negligence? If so, state what act or acts constituted said negligence.

"Yes, exceeding speed limit.

"2. After the automobile had stopped on the tracks, did either the plaintiff or the wife of the plaintiff make any attempt to start the automobile and get it off the tracks before the collision? If so, state which of the two parties named made such an attempt and state what he or she did.

"Yes, Brown, made effort to work gears.

"3. After the motorman discovered the peril of the plaintiff did he do all in his power to avoid the accident?

"Yes.

"4. If you answer the previous question in the negative, state what the motorman might have done that he did not do to avoid the accident after discovering the peril of the plaintiff.

"Nothing.

"5. Was there anything to prevent the plaintiff or his wife from seeing the approaching street car after the automobile had reached a point one-half block north of the street car tracks?

"Street car not in sight; no obstruction.

"6. Was the motorman sounding his gong as he approached the intersection of Sixth Avenue and Congress Street?

"Yes.

"7. Did either plaintiff or his wife see the street car approaching the intersection of Sixth Avenue and Congress street before the accident?

"Yes, plaintiff.

"8. Did plaintiff indicate to his wife in any way that the street car was approaching? If so, state how.

"No.

"9. Was there anything to prevent plaintiff's wife from stopping the automobile before it reached the street car tracks, or of turning the automobile to

the right or to the left on Sixth Avenue before she reached the street car tracks? If so, state what it was.

"No.

"10. Was plaintiff's wife an inexperienced driver?

"Yes.

"11. If you answer the preceding question in the affirmative, state whether the fact that plaintiff's wife was not an experienced driver, was one of the contributing causes of the accident?

"Yes.

"12. Did plaintiff, at the time he requested his wife to take the wheel, know that she was an inexperienced driver?

"Yes.

"13. Did the accident happen at the intersection of two of the main thoroughfares of the city and at a time and place where vehicles of different kinds, including street cars, were likely to be frequently passing?

"Yes.

"14. If you find that plaintiff knew, at the time he requested his wife to drive, that she was not an experienced driver, state if he acted as an ordinarily prudent and careful man would act in requesting her to drive at the time and place which he did.

"No.

"15. Do you allow plaintiff anything for the alleged injuries to his person? If so, how much?

"Fifteen cents for iodine.

"16. Is there anything of value remaining from plaintiff's car which still belongs to him?

"No.

"17. If you answer question ten, that defendant's wife was an inexperienced driver, and answer question eleven that her inexperience contributed to the injury, state whether such inexperience contributed further than placing the auto on the track and killing the engine?

"No.

"18. How far was the street car from the automobile when the auto first stopped on the tracks?

"210 feet.

"19. Was there anything between the street car and the automobile that obscured the view, or prevented the drivers of either from seeing the other?

"No.

"20. At what rate of speed was the street car moving when the auto first stopped on the track?

"Twenty-five miles.

"21. If the motorman had applied the brakes or reversed the power at the time the auto first stopped on the track could he have stopped the car and prevented the injury?

"Yes.

The findings disclosed that both parties were guilty of negligence, the plaintiff in permitting his wife, an inexperienced driver, to drive

the car on crowded thoroughfares; and by reason of her inexperience it became stalled on the street-car track. The defendant was negligent in operating the car at an excessive speed and in failing to apply the brakes and stop the car when the motorman saw or could have seen the automobile upon the track. Both parties being negligent the case was submitted to the jury to ascertain and find the proximate cause of the injury, under the application of the doctrine of "the last clear chance." The question then is, Could the defendant have avoided the accident after the peril was discovered and the negligence of the plaintiff had ceased? If it did not avail itself of the last opportunity to avoid the collision after the plaintiff's helplessness was or should have been seen, it cannot be relieved from liability because of the prior negligence of the plaintiff. (*Dyerson v. Railroad Co.,* 74 Kan. 528, 87 Pac. 680; *Juznik v. Railway Co.,* 109 Kan. 359, 199 Pac. 90.)

Defendant contends that the findings acquit it of all negligence except that of excessive speed and that under the fourth finding the motorman, having done all in his power to avoid the accident after the peril of plaintiff was discovered, had no last chance to avoid the collision. This finding, however, was modified by the twenty-first, which is that if he had applied the brakes or reversed the power when the automobile became stalled on the track he could have avoided the accident. Defendant says that these precautions were not taken because the plaintiff's peril was not discovered by the motorman. This contention is met by the finding that his car was 210 feet away when he came in view of the stalled car and that there was nothing to obscure his view nor prevent him from seeing the dead automobile on the crossing. The effect of the findings is that the motorman did not discover the peril of plaintiff in time to have stopped the car before it struck the automobile, but that he should have done so. He was running at the excessive speed of twenty-five miles an hour when he came in view of the car 210 feet from the crossing, and if he had used ordinary caution he could have seen the peril, brought his car under control, and in the distance mentioned could have stopped it before colliding with the automobile. Instead of that he ran recklessly on at a high speed and struck the automobile with such force as to demolish it, or as the jury found, so that nothing of the automobile of any value remained.

It is contended that the finding that the defendant was negligent in running his car at an excessive speed necessarily negatived other

charges of negligence, including the failure to keep a lookout for vehicles on the crossing. That would be a fair interpretation if no other findings had been made relative to the negligence of the defendant. It has been determined that a finding that the defendant was negligent in one respect does not preclude reliance on another ground of negligence fairly included in other findings. (*Springer v. Railroad Co.*, 95 Kan. 408, 148 Pac. 611; *DeHardt v. Railway Co.*, 100 Kan. 24, 163 Pac. 650.)

Obscurity or slight inconsistency in special findings does not necessarily require the overthrow of a verdict. All are to be considered together, and if one interpretation points to inconsistency with the verdict and the findings are fairly susceptible of another that will harmonize with it, the latter should be adopted. (*Kansas City v. Slangstrom*, 53 Kan. 431, 36 Pac. 706; *MacElree v. Wolfersberger*, 59 Kan. 105, 52 Pac. 69; *Osburn v. Railway Co.*, 75 Kan. 746, 90 Pac. 289; *Ahlstrom v. Kansas Milling Co.*, 85 Kan. 548, 118 Pac. 57; *Martin v. Railway Co.*, 93 Kan. 681, 145 Pac. 849.)

Applying this ruling, the findings in the present case may be interpreted that defendant was negligent in running his car at an illegal rate of speed and that while the motorman could not have avoided the collision after he actually discovered the car stalled on the crossing he could and should have seen it earlier, and that if he had then applied the brakes or reversed the power, the car could have been stopped and the collision prevented. No specific question was asked as to when he saw the stalled automobile nor as to how much time he had for bringing his car under control and stopping it after he should have seen it, but material facts in the case not embraced in the questions submitted are deemed to have been resolved in favor of the plaintiff by the general verdict. The accident occurred in daylight when there was no obstruction to the view of the motorman; the stalled auto was open to view when he was 210 feet away from it. Under the findings and verdict the jury manifestly found that he was negligent in failing to keep a proper lookout, and if he had he would have seen the helpless condition of the plaintiff upon the crossing and by the use of ordinary diligence could have stopped his car and avoided the accident.

Judgment affirmed.