No. 25,042.

J. R. Ladlie, *Appellee*, v. The American Glycerin Company, *Appellant*.

SYLLABUS BY THE COURT.

1. Explosion of Nitroglycerin—*Damages—Special Finding—Judgment.* In an action for damages caused by the explosion of nitroglycerin, the special findings of the jury considered, and held not to require that judgment be entered for defendant notwithstanding the general verdict against it.

2. Same—*Evidence—Finding that Plaintiff's Injury was Permanent.* There was sufficient evidence to support a finding that plaintiff's injury was permanent.

3. Same—*Qualification of Chiropractor to Testify Concerning Injury to Spine.* A chiropractor authorized to practice his profession is presumed to be sufficiently versed in the structure of the human spine to testify concerning it, and to testify concerning injuries which may affect it.

4. Same—*Competence of Chiropractor to Explain X-ray Pictures Made by Him.* A chiropractor who has made a study of an X-ray machine for 18 months and who has made 500 or 600 pictures of parts of the human skeleton with it, may be competent to interpret and explain to a jury the significance of such pictures made by him.

5. Same—*Defective Equipment of Automobile for Transportation of Nitroglycerin—Evidence.* Certain evidence offered to prove the defective equipment of an automobile for the transportation of nitroglycerin examined and held competent, relevant and admissible.

Appeal from Montgomery district court; Joseph W. Holdren, judge. Opinion filed February 9, 1924. Affirmed.

*T. H. Stanford, Lester G. Seacat,* and *Charles Seacat,* all of Independence, for the appellant.

*S. H. Piper, W. R. Hobbs,* and *W. B. Grant,* all of Independence, for the appellee.

The opinion of the court was delivered by

Dawson, J.: This was an action for damages on account of injuries sustained by plaintiff as the result of an explosion of 200 quarts of nitroglycerin which wrecked part of the village of Liberty and wrought other tragic consequences to life and limb.

It appears that the defendant is a manufacturer and distributor of high explosives used in oil and gas well development. On June 5, 1920 the defendant dispatched from Bartlesville, Okla., two new Dodge automobiles, each laden with 20 ten-quart cans of nitroglycerin, to be delivered at Paola. One of these cars was driven by G. C. Satterlee (*The State v. Satterlee*, 110 Kan. 84, 202 Pac. 636), and the other by Joe Dugan. Arriving at Liberty, in Montgomery county, the drivers halted to water their radiators, and then Satterlee started in the lead. He was shortly followed by Dugan, and after crossing a small culvert in the street his car dropped into a deep rut, and exploded. Dugan and his car were blown to atoms. The plaintiff, who was sitting in the engine room of his mill or elevator, some 700 feet distant, was flung off his seat to the floor, but picked himself up in a dazed fashion and joined the throng which had gathered at the scene of the explosion. There he fainted, and was first laid in a neighbor's dooryard, and then helped into an automobile and carried to his home, where he lay unconscious for some hours, and when he did recover consciousness he complained that his neck and spine hurt him—an ailing that, according to his testimony, has never ceased to trouble him.

Plaintiff sued defendant for damages, pleading various and sundry lasting injuries. Defendant's answer was a general denial, and denied all alleged acts of negligence and alleged that the explosion was an accident for which it was not responsible.

Jury trial, verdict for plaintiff, and special findings (in part):

"Question No. 1. If you find for the plaintiff, then state in what particular you find the defendant was negligent. Answer No. 1. Unequipped car.

"Question No. 2. Do you find from the evidence that the ditch or depression immediately north of and adjacent to the culvert at the corner of Elm and Front streets in the city of Liberty in any manner contributed to the explosion of the nitroglycerin? Answer No. 2. Yes.

"Question No. 3. Do you find from the evidence that, if the north approach to this culvert had been in ordinarily good condition so that the automobile in which this nitroglycerin was being transported would have passed over it without an unusual shock or jar, there would have been an explosion of the nitroglycerin? Answer No. 3. No.

"Question No. 4. Do you find from the evidence that there were any danger signals or barricades at or about the depression immediately north of the culvert to show its unsafe condition? Answer No. 4. No.

"Question No. 5. At what rate of speed do you find the car which exploded was traveling at the time of the explosion? Answer No. 5. Ten miles an hour.

"Question No. 6. Do you find from the evidence that the driver, Dugan, knew or could reasonably expect that an accident of his car would mean his own death and the destruction of the car and contents? Answer No. 6. Yes.

"Question No. 7. What do you find caused the nitroglycerin to explode? Answer No. 7. Friction or jar.

"Question No. 8. If you find for the plaintiff, then state of what you find his injuries, if any, consisted. Answer No. 8. Injury to the spine.

"Question No. 9. If you find for the plaintiff, do you find that his injuries are permanent? Answer No. 9. Yes."

Judgment for plaintiff; motion of defendant for judgment on findings and for a new trial overruled.

Defendant appeals, assigning many errors, the chief of which are noted below.

It is argued, first, that defendant was entitled to judgment on the special findings. Under this assignment, defendant points out that the jury found no negligence on the part of defendant except its failure to equip the Dugan car properly for the transportation of dynamite. Technically, that may be true, but it is fair to read all the jury's findings together. (*Brown v. Utilities Co.*, 110 Kan. 283, syl. ¶ 3, 203 Pac. 907.) Not only was the car improperly equipped, but Dugan drove it over a rough piece of road into a rut or depression at 10 miles an hour (Findings 2 and 5), which, naturally and perhaps inevitably, caused a jar sufficient to explode the dynamite. (Finding 7.) Defendant scores a talking point from the jury's answer to question 6, but it is only a talking point. Of course Dugan knew that an accident to his car, an explosion, would mean his own death. Auto drivers get killed or maimed every day of the year, notwithstanding they all know that such disastrous results are likely to flow from their negligence. The motion for judgment was properly overruled.

Another contention of defendant is that the finding of permanent injury to plaintiff's spine was contrary to the evidence. It may be conceded that there was considerable testimony for defendant that plaintiff was not much hurt by the explosion; that reputable physicians could find nothing the matter with him, even with the aid of an X-ray machine applied to him soon after his injury and again applied immediately prior to the trial some two years later; but on the other hand there was abundant evidence to make that stoutly contested fact a jury question. And the jury's finding ends that controversy.

Complaint is made of the admission of the testimony of a chiro-

practor, who was also an amateur X-ray operator, and of the X-ray photographs, "spinographs," made by him. A properly educated and licensed chiropractor is or should be an expert on the structure of the human spine, and his testimony would be competent. The weight of his testimony could be discredited or minimized by cross-examination, but that often happens to the testimony of regular physicians on matters where they affect to be dogmatic and pontifical. The eminent specialists called by defendant were candid enough to testify:

Question [to Dr. Surber]: "You couldn't say, Doctor, from the examination you made that he wasn't injured, could you? A. Well, no."

Question [to Dr. Chaney]: "You couldn't say simply because you have taken these pictures that Mr. Ladlie wasn't injured, could you? A. No, sir. I'm not saying that."

Defendant objected to the testimony of the chiropractor interpreting the X-ray pictures made by him of plaintiff's cervical and dorsal vertebræ. The objection was that he had not sufficient training on that subject to qualify him. The witness had experimented with an X-ray machine for eighteen months and had made 500 or 600 X-ray pictures. Just how much training and experience a person should have before becoming a recognized expert in X-ray picture interpretation, this court cannot say. There was no evidence on the subject; but surely a man who had made a professional study of the human spine, and who had worked with an X-ray for 18 months and who had taken 500 or 600 X-ray pictures of parts of the human skeleton could not be totally disqualified to testify; and any want of thoroughness of his information would only lessen the convincing force of his testimony; it would not bar its consideration altogether. In this connection it is also urged that it was nearly two years after the accident when these X-ray pictures were made by the chiropractor. Such remoteness would merely lessen their evidential value—not disqualify them, nor an interpretation of them. From the testimony of the chiropractor, defendant makes a clever argument to show how little the witness knew about the spinal column and that the little he did know was incorrect. As jurymen we might appreciate the argument; as a court of appeal we have little concern with it.

A serious error is urged in the admission of evidence relating to the Satterlee car—the one that did not blow up. Since the Dugan car was utterly demolished, the plaintiff had to establish its defective

character by such testimony as was available. It was shown that the two cars were alike—new Dodge commercial cars, used but little and consequently stiff in their springs and bearings; that when the Dugan car blew up, Satterlee a mile away became unnerved, doubtless fearful that his new and similarly equipped car might meet a similar fate; that he telephoned to his employer, who promptly dispatched to Liberty another car properly equipped, and that the load of dynamite was transferred to this other car. We think this evidence was competent and highly significant as tending to show that after the explosion, at least, the defendant's managing officer realized that new Dodge commercial cars were not proper vehicles nor properly equipped vehicles for the safe transportation of dynamite. The fact that the Dugan car was blown up was itself of no inconsiderable value as evidence that the cars were not properly equipped for the transportation of so dangerous a commodity as nitroglycerin. And whatever degree of care the defendant had exercised theretofore (and nothing less than the very highest would be sufficient, *Clark v. Powder Co.,* 94 Kan. 268, 146 Pac. 320), the defendant's manager concluded that a still higher degree of care could be exercised by transferring the explosives from the remaining Dodge car to one perfectly equipped for such purpose.

The other matters urged upon our attention have all been duly considered but they suggest nothing requiring discussion.

The judgment is affirmed.