No. 25,082.

E. C. Briggs, *Appellee*, v. C. V. Shepler, *Appellant*.

SYLLABUS BY THE COURT.

1. Exchange of Real Property—*Fraudulent Representations Charged—New Trial Granted—No Error.* In an action for damages because of fraudulent misrepresentations which induced an exchange of real properties, the record examined, and *held*, that judgment for defendant on the special findings, *non obstante*, was properly denied, that the granting of a new trial was subject to the trial court's discretion, and where plaintiff moved for a new trial and defendant filed an alternative motion to the same effect, no error could arise in allowing a new trial.

2. Same—*Metes and Bounds of Land—Meandering Bank of a River—Limitation of Actions.* Where a tract of land conveyed in a deed is described by metes and bounds, and one of the boundaries is the meandering bank of a river subject to change by accretion, erosion or avulsion, the true extent of the acreage of such tract cannot be said to be discoverable by a simple mathematical calculation based on the measurements recited in the deed nor by consultation of the public record of plats of the land, so as to start the running of the statute of limitations against an action for damages for fraudulent misrepresentation as to the extent of the acreage pretended to be conveyed.

3. New Trial—*No Ground Therefor Specified—No Question for Review on Appeal.* Rule followed that the granting of a new trial, where the particular ground thereof is not specified by the trial court nor clearly determinable from the record, presents no question for review.

Appeal from Barton district court; Daniel A. Banta, judge. Opinion filed March 8, 1924. Affirmed.

*F. L. Martin*, of Hutchinson, and Clyde Allphin, of Great Bend, for the appellant.

*L. A. Madison*, of Dodge City, *R. C. Russell*, and *D. A. Banta*, both of Great Bend, for the appellee.

The opinion of the court was delivered by

Dawson, J.: This was an action for damages arising from alleged fraudulent misrepresentations by defendant in an exchange of landed properties.

The plaintiff owned a hotel and town lots in Great Bend. The property was valued at $51,125 and was covered by a mortgage for $19,000. Defendant owned a tract and certain lots of land in Wyandotte county adjacent to the Missouri river, covered by a $3,000

mortgage. In January, 1918, plaintiff and defendant exchanged and conveyed to each other their respective properties, equity for equity.

In plaintiff's petition it was alleged that defendant falsely and fraudulently stated to plaintiff that his land was not subject to overflow and that it contained 247.5 acres and that it was readily worth $150 per acre, that defendant knew these representations were false, and that plaintiff relied on them and traded properties with defendant on that basis. Plaintiff alleged that the land was subject to periodical and annual overflows, that the acreage was far short of its represented extent, 159 acres instead of 247.5 acres, and that it was worth no more than $20 per acre. The deed from defendant to plaintiff was set out in the petition. It described defendant's Wyandotte county lands, viz.:

"Lots 1, 2, 3, 4, 5, 6, 7, 8 and 9 in Wolcott Park as said lots are marked and designated on the recorded plat of said Wolcott Park.

"Also

"Beginning eighty (80) feet west of the northeast corner of Lot 8, Wolcott Park, thence North 615 feet, thence north 34 degrees west 4.60 chains to the south bank of the Missouri River, thence down the said river with the meanders thereof to a point north 37 degrees and 44 minutes east from the most easterly corner of lot 5, Wolcott Park, thence south 37 degrees and 44 minutes west 2,981 feet more or less to the most easterly corner of said lot 5, Wolcott Park, thence northwesterly along the northeasterly line of said lot five to the east and west center line of Section 12, T. 10, R. 23, thence west to the southeast corner of lot 7, Wolcott Park, thence north along the east line of Lot 7, 1320 feet to the northeast corner thereof, thence west 410 feet more or less to the point of beginning."

All other requisite allegations for damages on account of fraud were properly pleaded.

The defendant answered with a general denial and denied that the fair value of plaintiff's hotel property was $51,125 or that plaintiff's equity therein was worth $34,125, and alleged that the hotel was worth no more than $29,000 and that plaintiff's equity was worth about $10,000; that the properties were exchanged, equity for equity, each party assuming the mortgage on the property conveyed to him; that before trading, defendant insisted that plaintiff should go to Wyandotte county and view the property, which plaintiff did, and that the contract of exchange was made thereafter. Defendant also alleged that he made no representations as to the acreage, but described it simply as lying along the west bank of the Missouri river, near the village of Wolcott Park and—

"That the land was described by metes and bounds and followed the meander lines of the west bank of the said Missouri river and that owing to its being adjacent to said river that its boundary line was necessarily ever changing, sometimes the acreage being added thereto by accretion and sometimes decreasing on account of said river changing its course; and, that at the time the plaintiff E. C. Briggs viewed the said land the same was practically all fenced so that plaintiff was enabled to learn the possible size of said farm."

Defendant further answered that on August 6, 1920, plaintiff commenced an action in the federal court against defendant because of this land trade, but in his petition therein plaintiff charged no misrepresentations about the land not being subject to overflow; that this action was dismissed on September 29, 1921, at plaintiff's costs, and that the federal court never had jurisdiction of the action because plaintiff and defendants were at all times residents of Kansas, and that the pendency of the federal action did not toll the statute of limitations against this action, which was filed October 10, 1921.

Defendant further pleaded that on March 6, 1920, more than two years after the transfer and conveyance of the exchanged properties, plaintiff and defendant made a final settlement in writing of all matters between them growing out of the land and hotel trade of 1918, for certain valuable considerations therein expressed. This written contract of March 6, 1920, was attached as Exhibit A to defendant's answer and cross petition.

Plaintiff replied that no such settlement was made; that the contract, Exhibit A, was represented to him as pertaining to extraneous matters wholly unrelated to the hotel and land trade, and that he had been induced to sign Exhibit A through defendant's misrepresentations and fraud.

Jury trial; verdict for plaintiff, $2,460; special findings, viz.:

QUESTIONS SUBMITTED BY DEFENDANT.

"1. Q. If you find that the defendant was guilty of fraud in the trade involved in this action, state fully what constituted such fraud. A. In deceiving the plaintiff as to the amount of acres in the tract of land he sold to said plaintiff in Wyandotte county, Kansas, and also in the value thereof.

"2. Q. What, if any, fraud was perpetrated by the defendant to induce the plaintiff and his wife to sign the contract of settlement made March 6, 1920? A. In still concealing the facts from the plaintiff in the land trade consummated in 1918.

"3. Q. If you find for the plaintiff, then state what amount you allow for difference in acreage. A. Two thousand four hundred sixty dollars ($2,460.00) for 61½ acres. . . ."

Briggs v. Shepler.

"1. Q. At the time of the execution of the contract on March 6, 1920, did the plaintiff know of the fraud of which he now complains. If so how long before that time did he learn it. A. No.

"2. Q. What constituted the consideration that entered into that contract? A. The sum of one dollar and other good and valuable consideration, in hand paid and received; also that the said parties of the first part shall be relieved from any and all liability that may have been incurred by reason of any dealings or trade as between the parties hereto.

"3. Q. Was it the intention of the plaintiff and defendant at the time the contract plead in defendant's cross petition was executed that any damages claimed by the plaintiff on account of the exchange of property between them should be included therein and settled all matters of differences between them. A. Yes."

Plaintiff moved for a new trial; defendant moved for judgment on the special findings or a new trial. Defendant's motion for judgment was overruled, and plaintiff's motion for a new trial was sustained.

Error is assigned on these rulings adverse to defendant. They do not require much discussion. Certainly the court had power to grant the plaintiff a new trial; and, indeed, it was its imperative duty to do so unless it could give its independent and conscientious approval of the verdict of the jury (*Butler v. Milner*, 101 Kan. 264, 166 Pac. 478), or unless it could clearly determine from the special findings for whom and for what amount judgment should be entered; and even in such case the special findings upon which such judgment could be entered would be as much in need of the trial court's independent approval as any general verdict. (*Shore v. Shore*, 111 Kan. 101, syl. ¶ 1, 205 Pac. 1027; *The State v. Frey*, 111 Kan. 798, 802, 208 Pac. 574.) Nor can it be discerned how judgment could have been entered *non obstante* for defendant on the special findings. The findings, Nos. 2 and 3 of the second series, which by themselves may be superficially construed as favorable to defendant, lose that construction altogether when read and considered with all the others, as they should be (*Brown v. Utilities Co.*, 110 Kan. 283, syl. ¶ 3, 203 Pac. 907; *Ladlie v. American Glycerin Co.*, ante, p. 507, 223 Pac. 272); and a judgment for defendant thereon would have been highly improper.

It is argued that the deed to the Wyandotte county land, as soon as executed and delivered, or recorded, showed just what acreage of land was conveyed to plaintiff and that he could not defer action

for a shortage of acres beyond the ordinary statutory period for bringing such an action. It is argued that anyone familiar with mathematics could compute the exact number of acres from the description in the deed. One of the described boundaries of the land was the meandering south bank of the Missouri river, which changes by accretion, erosion or avulsion, as indeed the defendant's answer admitted, and consequently no mathematical calculation based upon a mere verbal description could determine the actual acreage, nor foreclose the dispute about the alleged misrepresentation of the acreage. At all events, this point could be no more than a question for a jury. It could not be declared as a matter of law that such a deed showed on its face, even with the aid of the county record of platted lands of Wyandotte county, that the acreage conveyed was substantially less than that which the defendant represented and pretended to convey in exchange for plaintiff's hotel; nor did the inspection of the land itself by the plaintiff, a hotel keeper who had no judgment as to land acreage, estop him to rely on defendant's representations touching the acreage. It does not clearly appear, either in the pleadings or in the testimony, just when plaintiff did discover the alleged fraud relating to the acreage, so it cannot be judicially declared that this action was barred by the statute of limitations at the time it was begun—even if the pendency of the federal action was altogether ineffective to toll the statute, which point is not decided. From the jury's findings it might be inferred there was some evidence that as late as March 6, 1920, when the supplemental contract was made, the plaintiff had not yet discovered the fraud. If that should be satisfactorily shown, this action was begun in time, since it was filed on October 10, 1921. (*Foy v. Greenwade,* 111 Kan. 111, 206 Pac. 332.)

But all these observations are largely superfluous here. The trial court granted a new trial without specifying the particular grounds thereof. In such case, no error can be based thereon. (*Chop v. Swift & Co.,* 113 Kan. 371, syl. ¶ 2, 214 Pac. 407.) In this case not only did plaintiff file a motion for a new trial but the defendant filed an alternative motion to the same effect—several of the grounds urged as a basis therefor being identical in both motions. In such a situation no error in granting a new trial could possibly occur.

Affirmed.