No. 28,978.

MAGGIE GREINER, *Appellant,* v. LOUIS R. GREINER, LILLIE GREINER et al., *Appellees.*

(283 Pac. 651.)

Opinion filed January 11, 1930.

*C. A. Walsh, Jr.,* of Concordia, for the appellant.
*R. L. Hamilton,* of Beloit, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This appeal involves the single question of the special findings of the jury being inconsistent with each other and with the general verdict. The trial court overruled the motion of plaintiff for judgment on findings 1, 2, 3, 4, 8 and 13, also motion to set aside findings 5, 6, 7, 9, 10, 11, 12 and 14 and motion for new

trial, and rendered judgment on the general verdict in favor of defendants, from which judgment plaintiff appeals.

The suit is upon a $3,000 note which the defendants, husband and wife, gave October 17, 1922, to the husband's brother Henry, who was a single man and died intestate in June, 1925; and his mother, the plaintiff herein, being his sole and only heir, became the owner and holder of the note. The note was secured by a real-estate mortgage which had never been recorded. These matters are set up in the petition and admitted in the answer. The answer denies any obligation on the note, and alleges that about ten days after the death of Henry, the plaintiff asked Louis, the defendant, to help her make the settlement of the estate; that she did not know how to go about it, and told him if he would help her to attend to the matter of the settlement, she, as heir of Henry, would cancel the note he had given Henry; that he promised to help her and did during the entire settlement, selling property, collecting notes and attending "to matters with the court and her attorneys"; that on November 17, 1926, the day of settlement in probate court, the attorneys advised, solely for the purpose of settlement, the cancellation of the original note to Henry and the issuance of a new note and mortgage directly to the mother, and the old note and mortgage were there canceled. That the new note and mortgage were given to the mother and later that evening after returning home they were destroyed at plaintiff's request, in fulfillment of her promise for his services in settling the estate. The reply was a general denial. After hearing the evidence and instructions, the jury rendered a general verdict for the defendants, and the following are the answers they made to the fourteen special questions submitted to them:

"Q. 1. Did Louis R. Greiner and Lillie Greiner execute a new note and mortgage to Maggie Greiner in the office of Frank A. Lutz, in Beloit, Kan., on Nov. 17, 1926, to take the place of the note for $3,000 executed by Louis R. Greiner and Lillie Greiner on October 17, 1922, and the mortgage securing the same? A. Yes.

"Q. 2. If you answer question No. 1 'Yes,' were such new note and mortgage securing the same prepared by attorney, Frank A. Lutz? A. Yes.

"Q. 3. If you answer question No. 2 'Yes,' to whom did Frank A. Lutz give the new note and mortgage after it was prepared and executed by Louis R. Greiner and Lillie Greiner? A. Louis R. Greiner.

"Q. 4. Was the plaintiff present at the office of Frank A. Lutz at the time that he gave the new note and mortgage to Louis R. Greiner, if you find that he gave it to him? A. No.

"Q. 5. Did Louis R. Greiner tell the plaintiff Maggie Greiner on Nov. 17, 1926, that he had to keep the new note and mortgage in order to have them recorded? A. No.

"Q. 6. Did the plaintiff Maggie Greiner ever see the new note and mortgage after they had been delivered by attorney, Frank A. Lutz, to Louis R. Greiner? A. Yes.

"Q. 7. Did the plaintiff place the note for $3,000 which she kept in her possession with the Farmers State Bank of Hunter, Kan., for collection on or about the month of June, 1927? A. No.

"Q. 8. Did the plaintiff request the cashier of the Farmers State Bank of Hunter, Kan., to notify Louis R. Greiner to pay said note on or about Oct. 17, 1927? A. Yes.

"Q. 9. Have the defendants paid the note sued upon in this action? A. Yes.

"Q. 10. If you answer the last preceding question 'Yes,' state when said note was paid. A. When the plaintiff was discharged as administrator of the estate of H. P. Greiner.

"Q. 11. If you answer that said note was paid, state in detail just how it was paid. A. By services rendered the plaintiff settling the estate of H. P. Greiner.

"Q. 12. Was there any specific contract made by Maggie Greiner with Louis R. Greiner that she would return the note of Louis R. Greiner and Lillie Greiner to them for a stated consideration? A. Yes.

"Q. 13. If you answer the last preceding question 'Yes,' state exactly what such consideration was. A. A promissory note of $3,000 sued upon by the plaintiff.

"Q. 14. If you answer that such contract was made, state the date when it was made. A. On or about June 24, 1924."

Appellant urges that the answer to special question 13 is inconsistent with the other findings and with the general verdict, and that on that account it was error to overrule the motion of plaintiff for judgment on the special findings and later to overrule the motion for new trial. The appellant maintains the answer to question 13 is in effect a finding that there was no consideration whatever for the promise from the plaintiff. Of course it would not be a valid contract if there was no consideration for it, but all the findings must be considered together and finding 11 gives a consideration for such promise in line with the pleadings. It is suggested by appellees that the jury simply omitted from the answer the words "cancellation of" or "return of" in referring to the promisory note, but still that will not make the answer technically and literally accurate. Reading questions 12 and 13 together, the answer to question 13 necessarily refers to the consideration which the defendants were to give the mother for her promise to return the note to them, and of course that

consideration going from them to her for that promise was not the note sued upon as stated in the answer. This answer does not, however, mean no consideration for the promise, but it simply means a reversal or confusion of the two considerations. There is no trouble in reading this answer with the others to know what the jury meant. They simply were confused as to whether it was what the plaintiff got or what she gave. The jury found in findings 9 and 11 that the note had been paid and how it had been paid. There are only two considerations in a contract, one on each side—in this contract the note on one side and the performance of the services on the other side. Plaintiff was to give over the note and get the services. Defendant was to give the services and get the note.

It must be admitted that the answer is technically incorrect, but no one could fail to readily understand just what was intended. The only one who could give the note sued on is the plaintiff. Besides, the jury may have had a very good reason for being confused as to the proper answer to this question. The correct answer under the pleadings and the evidence would have been substantially the same as that given to question 11, and they would naturally think that was not what was wanted—in other words, a repetition. The learned counsel for appellant has shown great diligence and research in presenting in forcible array many authorities which require judgments to be reversed and new trials to be granted when there is an inconsistency in the findings with each other or with the general verdict, but they are not helpful except as they, in the first place, assist in the determination of whether or not this is a real and actual inconsistency.

In the case of *Burnell v. Bradbury*, 69 Kan. 444, 77 Pac. 85, the jury returned a verdict of one dollar for plaintiff and found the plaintiff was entitled to recover one dollar punitive damages and no nominal damages, which was necessary before any punitive damages could be allowed. The court held:

"The findings themselves, as above shown, disclose that the allowance by finding No. 8, of one dollar for punitive damages, could not have been otherwise than a finding of nominal damages. The special findings of the jury should be so construed as to harmonize them and uphold the general verdict, if possible so to do." (p. 447.)

In the case of *Kansas City v. Slangstrom*, 53 Kan. 431, 36 Pac. 706, which was an action for damages against a city and a land company charging joint liability, some of the findings were to the effect

that they did not act jointly in the construction work of which complaint was made, and it was held:

"Special findings returned by the jury are to be considered together, and, if possible, are to be so construed as to harmonize them, and to uphold the general verdict." (Syl. ¶ 3.)

"The general verdict will stand, unless the facts as stated in the special findings are inconsistent therewith; and where a mass of questions is presented and the answers thereto are to some extent apparently inconsistent and contradictory, this court will not strain a point to harmonize those answers and frame a theory upon which the answers can be pronounced as a whole inconsistent with the general verdict, but will uphold the general verdict unless the facts as obviously disclosed·by the answers to the special questions are inconsistent therewith and compel a different judgment, or unless the answers are so directly and plainly contradictory as to show that the jury gave no intelligent attention to either the testimony or the questions, or unless some special facts appear to show that there has been a mistrial or a failure of justice." (*Mo. Pac. Rly. Co. v. Holley,* 30 Kan. 465, syl. ¶ 2, 1 Pac. 130.)

In *Packing Co. v. Howe,* 68 Kan. 663, 75 Pac. 1014, where possession of the defendant was a necessary element to sustain the general verdict and one of the answers given as to his possession was in the negative while two other answers plainly showed he was in possession, the court held:

"From all the findings, it would appear that the jury meant that Howe was in the possession of the land on December 22, 1895 . . . Viewed in this light, there is no inconsistency with the other findings or with the general verdict." (p. 669.)

In *Springer v. Railroad Co.,* 95 Kan. 408, 148 Pac. 611, where the principal negligence charged against a railroad company was the delay in stopping the train after the brakeman became aware of the peril, and there had been answers to that effect, the jury in answer to another question said in effect the only negligence was in the failure to keep a flagman at the crossing. The court held all the answers should be given the meaning intended, however unskillfully expressed.

In *Briggs v. Shepler,* 115 Kan. 614, 224 Pac. 61, it was said:

"The findings, Nos. 2 and 3 of the second series, which by themselves may be superficially construed as favorable to defendant, lose that construction altogether when read and considered with all the others, as they should be." (p. 617.)

In another case in same volume, *Ladlie v. American Glycerin Co.,* 115 Kan. 507, 223 Pac. 272, the jury found there was no negligence

on the part of the defendant except failure to equip the auto truck properly, but other findings showed the negligence of the driver, and the court read and construed all the findings together, notwithstanding the superficial and apparent contradiction. See, also, *Brown v. Utilities Co.,* 110 Kan. 283, 203 Pac. 907; *Paint & Oil Co. v. Bank,* 110 Kan. 698, 205 Pac. 351; *Rockwood v. Stubenhofer,* 119 Kan. 307, 239 Pac. 993; *Wilson v. Fowler Packing Co.,* 123 Kan. 470, 255 Pac. 1109; 4 C. J. 1056; 2 R. C. L. 184.

We conclude that while the literal reading of the answer to question 13 is apparently inconsistent with the other findings and the general verdict, yet because of the impossibility and absurdity of the finding when so read, and the very apparent and reasonable intention of the jury when this answer is considered in connection with the other findings, we have no hesitancy in holding there was in fact no inconsistency. All the rulings on motions and all the errors complained of related to and depended upon this alleged inconsistency, and we therefore find no error in such rulings.

The judgment is affirmed.

JOCHEMS, J., not participating.

HARVEY, J. (concurring specially): I concur in the judgment of affirmance, but prefer to state my reasons as follows: The note sued on in this action was dated November 17, 1926, for the sum of $3,000, signed by Louis R. Greiner and Lillian Greiner, his wife, and made payable to Maggie Greiner. This was executed to take the place of a note for the same amount by the same makers payable to H. P. Greiner and dated October 17, 1922. (See finding No. 1.) I think this was the transaction the jury had in mind when it answered questions 12 and 13. The old note, payable to H. P. Greiner, was returned to the makers in consideration of the new note sued on in this action. The jury found, in answer to special questions 9, 10 and 11, that the note sued on in this action was paid by services rendered the plaintiff in settling the estate of her son. It is true that the contract by which the maker of the note performed services to the plaintiff in the settlement of the estate of her son was made soon after the son's death, as found in answer to question 14, but the services were not fully performed, and the jury did not regard payment as having been completed until the estate was fully administered. In this view of the matter there is no material conflict in the findings. Since Maggie Greiner inherited

all of the estate of her son, H. P. Greiner, and since she agreed with her son Louis that she would give him the amount of his indebtedness to the estate for his services in assisting her in settling the estate, the attorneys in charge of the matter evidently thought it could be handled best by having Louis R. Greiner and his wife execute a new note to the plaintiff for the old note to H. P. Greiner, and that the plaintiff, as an individual, would then be in a position to cancel or surrender that note to Louis in payment of his services in accordance with her agreement with him. This was an appropriate way to handle the matter, and perhaps the best way.